NUTIS ET AL., APPELLANTS, *v.* SCHOTTENSTEIN TRUSTEES ET AL.

(No. 86AP-1082—Decided
June 30, 1987.)

*Luper, Wolinetz, Sheriff & Neidenthal Co., L.P.A.,* and *Stanley L. Myers,* for appellants.

*Lucas, Prendergast, Albright, Gibson & Newman* and *Rankin M. Gibson,* for appellee Schottenstein Trustees.

*Ronald J. O'Brien,* city attorney, and *Donald T. Plank,* for appellee city of Columbus.

REILLY, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas. Plaintiffs are owners of real property located at 2929 East Broad Street, Columbus, Ohio. The property is described as follows:

"Being Lot No. 8 of Broadleigh Addition, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book No. 14, pages 16 and 17, Recorder's Office, Franklin County, Ohio."

Defendant Schottenstein Trustees (hereinafter "Schottenstein") is the owner of undeveloped real property which is adjacent to the residence (Lot No. 8) owned by plaintiffs and which is located at the southeast corner of East Broad Street and Gould Road. This property is described as follows:

"Being Lots Numbered Nine (9) and Ten (10) in BROADLEIGH, an addition to the City of Columbus, Franklin County, Ohio, as the same are numbered and delineated upon the recorded plat thereof, of record in Plat Book 14, pages 16 and 17, Recorder's Office, Franklin County, Ohio."

Both parcels are located in the Broadleigh Addition. As platted on August 9, 1920, the Broadleigh Addition consists of two hundred thirty-eight lots bounded on the west by Gould Road; on the east by Chesterfield Road; on the north by Maryland Avenue; and on the south by Etna Street. The recorded plat does not include a statement of covenants or restrictions relative to any of the lots in the subdivision.

Defendant Schottenstein plans to construct a two-story office building on Lot Nos. 9 and 10. However, plaintiffs contend that such a use would violate the single-residence restriction contained in the chain of title for these lots. Both the plaintiffs' and Schottenstein's chains of title include deeds setting forth the following restriction:

"PROVIDED ALWAYS, and those presents are executed and delivered by the grantors and accepted by the grantee upon the express condition, which was also part of the consideration for the sale and conveyance of the above described premises by the said grantor to said grantee; that the said grantee for herself[,] her heirs, executors, administrator and assigns, or any one holding or claiming under them, or either of them, shall never, himself, herself or themselves, or any one of them, hereafter erect, build or construct, or cause to be erected, built or constructed, or permit or authorize any one else to erect, build or construct any building upon the said premises herein before described, or any part thereof, *except single residences * * *.*" (Emphasis added.)

Schottenstein acquired a zoning variance for the property which was rezoned Commercial Planned Development. Thereafter, plaintiffs filed a complaint for an injunction and declaratory judgment against Schottenstein and the city of Columbus. Schottenstein filed a counterclaim alleging that a substantial change in the neighborhood had made the restrictive covenant invalid and unenforceable, since it would impose great hardship upon

Schottenstein with minimal benefits to plaintiffs.

The case was tried to the court, which entered findings of fact and conclusions of law. The court dismissed plaintiffs' action and found that the single-residence restriction in the chain of title for Lot Nos. 9 and 10 (the Schottenstein parcel) was no longer binding or enforceable.

Plaintiffs assert the following assignments of error:

"I. The trial court erred in concluding that plaintiffs lacked standing to seek enforcement of the restrictive covenant contained in the chains of title to defendant Schottenstein Trustees' property.

"II. The trial court erred in finding that the covenant restricting development and use of defendant Schottenstein Trustees' property to single residency was no longer binding and enforceable due to substantial change in the character of the neighborhood.

"III. The trial court erred in concluding that the restrictive covenant contained in defendant Schottenstein Trustees' chains of title was invalid under the Ohio Marketable Title Act.

"IV. The trial court erred in accepting, affirming, and adopting defendant's findings and conclusions because these findings and conclusions are against the manifest weight of the evidence and are contrary to law."

In the first assignment of error, plaintiffs question the court's finding that they lacked standing to enforce the restrictive covenants in the chains of title to Lot Nos. 9 and 10.

Since plaintiffs are not the prior owners of Lot Nos. 9 and 10, there is no privity of estate herein. Hence, whether plaintiffs have standing to enforce the single-residence restriction contained in the deeds to Lot Nos. 9 and 10 is to be determined by the "intention of the parties to be gained from

the language of the instrument and the surrounding circumstances. * * *" *Berger* v. *Van Sweringen Co.* (1966), 6 Ohio St. 2d 100, 102, 35 O.O. 2d 127, 128, 216 N.E. 2d 54, 56-57.

Restrictive covenants are to be construed strictly against the restriction and in favor of the free use of land. See *Carranor Woods Property Owners' Assn.* v. *Driscoll* (1957), 106 Ohio App. 95, 101, 6 O.O. 2d 361, 364, 153 N.E. 2d 681, 685.

The Supreme Court stated the following in the syllabus of *Berger, supra:*

"Where it is shown by competent evidence that restrictive covenants sought to be cancelled were imposed by a developer of land upon the property of an owner for the benefit of other property owners, in order to effect a general building scheme or plan, the intended beneficiaries may maintain an action for the enforcement of such restrictive covenants against the developer and the owner seeking cancellation of the restrictive covenants upon his property."

The "burden is upon * * * [the purchaser] to show that such covenant restricting the use of the lands of another was intended to be for his benefit, and that he has an equitable interest in the other person's adherence to the covenant. * * *" *Id.* at 102, 35 O.O. 2d at 128, 216 N.E. 2d at 57. The determination as to whether one purchaser in a subdivision may enforce restrictive covenants covering another purchaser's land is best decided by asking the following question: "For whose benefit was the restriction imposed?" *Id.*

The owner of one property may enforce restrictive covenants against another property owner only where the covenants are for their mutual benefit. Although not the sole or exclusive method of enforcing restrictive covenants, courts have held they are

for the mutual benefit of other property owners when there is a uniform general plan of improvement for the development. See *Dixon* v. *Van Sweringen Co.* (1929), 121 Ohio St. 56, 60-61, 166 N.E. 887, 888. Neighborhood restrictions should be substantially uniform and imposed upon all lots since each owner carries the burden of the restriction but also enjoys the benefit of enforcement against other property owners.

Thus, plaintiffs do not have a right to enforce the covenant restricting Lot Nos. 9 and 10 in the Broadleigh Addition to single-residence usage unless the covenant was created for the mutual benefit and protection of the parties. Whether the original grantors, as a part of a general plan of development, intended to impose uniform restrictions upon each lot owner can best be determined by the language of the deeds and surrounding circumstances.

The record does not show that the single-residence restriction appears in the chain of title of the remaining two hundred thirty-five lots (excluding, that is, Lot Nos. 8, 9 and 10) in the Broadleigh Addition. Further, there is no express language in the February 9, 1921 deed from John and Amelia Lotz conveying Lot Nos. 7 and 8 to Florence Schmitt, the December 14, 1920 deed from John and Amelia Lotz conveying Lot No. 9 to Anna Heffner, and the April 4, 1927 deed from John and Amelia Lotz conveying Lot No. 10 to Truitt B. Sellers, that a similar restriction against anything other than single-residence usage was imposed upon the other lot owners in the Broadleigh Addition.

The only language in the above-mentioned deeds which might reflect an intent to create a uniform plan of development is that the deeds provide for minimum valuations for all lots within the Broadleigh Addition. Nevertheless, the deeds do not show that a single-residence restriction was placed upon all the other lot owners. Moreover, the recorded plat is silent concerning whether purchasers of lots in the Broadleigh Addition are subject to a single-residence restriction. Therefore, neither the language in the deeds nor the recorded plat provides any definite intention by the original grantors to establish a uniform plan of development in which a single-residence restriction was included in each deed for the mutual benefit and protection of all purchasers of lots in the Broadleigh Addition.

The other evidence presented by plaintiffs also does not establish a uniform plan of development. The certified copy of the Last Will and Testament of John Lotz shows that he and his wife entered into a real estate contract with certain persons to sell twenty-four and one-half acres of real estate which was subdivided into lots known as the Broadleigh Addition. There is no reference to any building plan or language to the effect that such restrictions were imposed upon all original grantees.

Plaintiffs' reliance upon the "Reverter Waiver" executed on February 11, 1942, presumably by the heirs of John Lotz, is not dispositive. The "Reverter Waiver" stated that particular lots in the Broadleigh Addition had been conveyed by deeds which contained various restrictions and covenants, all of which were in the nature of conditions subsequent. The breach of these restrictions and covenants resulted in a forfeiture of title. The document provided that the owners and mortgagees of certain lots are released and discharged of "all rights of forfeiture and reversion." The document does not indicate which lots have been conveyed with restrictions or the type of restrictions imposed. Thus, the "Reverter Waiver" does not prove that there was a sole uniform plan of development for all

original grantees in the Broadleigh Addition for single residence usage.

Plaintiffs claim that even if there was insufficient evidence of a uniform plan of development, they nevertheless may have standing to enforce the restrictive covenants in defendant Schottenstein's deeds since both parties derive title from the original grantor and are adjacent landowners. See *Berger, supra.*

Plaintiffs' reliance, however, upon the Supreme Court's holding in *Berger, supra,* in support of their proposition is not well-taken. In *Berger,* adjacent landowners (the plaintiffs) were outside the subdivision in which the defendants' property was located, and were, notwithstanding, intended beneficiaries of the restrictions contained in the instruments in question which restrictions expressly provided:

" 'The herein enumerated restrictions, rights, reservations, limitations, agreements, covenants and conditions shall be deemed as covenants and not as conditions hereof, and shall run with the land, and shall bind the owner until the first day of May, 2026, in any event, and continuously thereafter, unless and until any proposed change shall have been approved in writing by *the owners of the legal title to all the land on both sides of the highway within the block in which is located the property,* the use of which is sought to be altered by said proposed change.' " (Emphasis *sic.*) *Berger, supra,* at 103, 35 O.O. 2d at 129, 216 N.E. 2d at 57.

Consequently, in *Berger,* a release of the covenants could only be obtained by the consent of the surrounding property owners. There is no similar language contained in the deeds found in the chains of title to Lots No. 8, 9 and 10, which are involved in this case.

The record does not include evidence that the single-residence restriction constitutes a restrictive covenant for the, mutual benefit and protection of both parties. Hence, the trial court did not err in finding that plaintiffs lacked standing to enforce the single-residence restriction in the chains of title to Lot Nos. 9 and 10 owned by Schottenstein.

Plaintiffs' first assignment of error is not well-taken.

Plaintiffs, in their second assignment of error, contend that Schottenstein has not shown by clear and convincing evidence that the neighborhood has changed so radically that the restriction has lost its value and therefore is no longer enforceable.

Generally, restrictions against use for commercial purposes will not be enforced in equity where the character of the locality has radically changed. Where a single-use-only restriction has lost its purpose or value, a court will declare such restriction no longer binding. *Winfrey* v. *Marks* (1968), 14 Ohio App. 2d 127, 128-129, 43 O.O. 2d 307, 308-309, 237 N.E. 2d 324, 326-327.

Even if plaintiffs had standing to enforce the restrictive covenants contained in the chains of title to Lot Nos. 9 and 10, there was clear and convincing evidence before the trial court to find that the single-residence restriction is no longer enforceable because of a substantial change in the character of the neighborhood; that enforcement of the restriction would not restore the neighborhood to its residential character; and that such enforcement would appear to impose a great hardship on Schottenstein with minimal benefit to plaintiffs.

There was evidence before the trial court which indicated that the neighborhood had radically changed. For instance, the increasing flow of traffic, the numerous commercial enterprises which have been constructed on East Broad Street, and the absence of any single residence being constructed east of Gould Road along Broad Street in the last twenty-five to thirty-five years.

Most of the lots in the Broadleigh

Addition which presently border East Broad Street are not single residences, but are used entirely for business purposes. Further, the evidence shows that the other properties outside the Broadleigh Addition along East Broad Street east of Gould Road to James Road also have been converted to commercial usage.

Plaintiffs' second assignment of error is overruled.

Plaintiffs' third assignment of error is that the trial court misconstrued the Ohio Marketable Title Act when it stated, in its Conclusion of Law 6, that:

"Under the Ohio Marketable Title Act, a general reference to use restrictions created in the root title more than forty years ago, is invalid and unenforceable. R.C. §§ 5301.47 to 5301.49; *Toth* v. *Berks Title Insurance Co., et al.,* 6 Ohio St. 3d 338, 453 N.E. 2d 639 (1983). * * *"

R.C. 5301.47(A) states:

" 'Marketable record title' means a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code."

The Act focuses on the elimination of usage restrictions that were created prior to the root of title. In this case, the single-residence restriction was not created prior to the execution date of Schottenstein's root of title. The deed executed on December 14, 1920, which is the root of title to Schottenstein's Lot No. 9, and the deed executed on April 4, 1927, which is the root of title to Lot No. 10, are the instruments that established the single-residence restriction. Nevertheless, the trial court's finding does not prejudice plaintiffs since the discussion concerning the other assignments of error is dispositive of this case.

Plaintiffs' third assignment of error is not well-taken.

As to plaintiffs' fourth assignment of error, the record, as noted above, supports the trial court's determination that plaintiffs did not have standing to enforce the restrictive covenant and that there was clear and convincing evidence before the court to support its finding of a substantial change in the Broadleigh neighborhood. Further, the trial court's misconstruction of the Ohio Marketable Title Act constitutes harmless error. Thus, the trial court's findings of fact and conclusions of law are not against the manifest weight of the evidence or contrary to law.

Plaintiffs' fourth assignment of error is not well-taken.

Accordingly, plaintiffs' assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN and GEORGE, JJ., concur.

JOYCE J. GEORGE, J., of the Ninth Appellate District, sitting by assignment in the Tenth Appellate District.