Plaintiffs-appellants Frank and Irene Meisse appeal from a declaratory judgment holding that various named defendants, owners of lots within the Block DX Sunnyland Subdivision, have standing to enforce restrictive covenants limiting the Meisses' use of their nearby parcel of real estate to use as a non-profit outdoor recreation area. The Meisses contend that the restrictive covenants found in the deed for their parcel were not for the benefit of the Block DX owners; that their parcel was not part of the Sunnyland Subdivision; and, therefore, that it was not part of a general plan of development. Accordingly, the Meisses argue that the Block DX owners do not have standing to enforce the restrictive covenants.
After reviewing the deed and related documents, we conclude that the restrictive covenants found in the deed for the property owned by the Meisses were intended to benefit the Block DX owners. Even though the Meisses' parcel is not part of the Sunnyland Subdivision, the Block DX owners have standing to enforce the restrictive covenants. Accordingly, the judgment of the trial court is Affirmed.
 I
In 1954, defendant James Lumber and Realty Co. filed a plat of the Block DX Sunnyland Subdivision, an addition to the existing Sunnyland Subdivision, with the Clark County Recorder's Office. With the plat, James Lumber and Realty Co. filed a set of restrictive covenants for the Block DX Sunnyland Subdivision.
In 1955, James Lumber and Realty Co. conveyed a 7.73 acre parcel of real property to Family Recreation Club, Inc. The parcel, described in metes and bounds, was neither part of, nor adjacent to, the Block DX Sunnyland Subdivision, but was located down the street from the subdivision. In the deed to the parcel, James Lumber and Realty Co. included a restriction that made the conveyance to defendant-appellee Family Recreation Club, Inc. subject to the restrictions set forth in the recorded plat of Block DX Sunnyland Subdivision, except that the Block DX Sunnyland Subdivision restrictions were to be of no force and effect unless the parcel ceased to be owned and operated by a non-profit organization for the purpose of constructing, operating, and maintaining an outdoor recreation area.
In 1956, Family Recreation Club constructed a swimming pool and shelter house on the 7.73 acre parcel and began doing business as the Overbrook Swim Club. The Overbrook Swim Club has operated continuously since its inception. Some time thereafter, the James Lumber and Realty Co., the grantor, dissolved and ceased doing business.
In June, 1995, the Meisses contracted with Family Recreation Club, Inc. to purchase the Overbrook Swim Club. The contract to purchase real estate was contingent upon the release of the "non-profit" restriction contained in the deed for the Overbrook Swim Club property.
In January, 1996, the Meisses filed an action for declaratory judgment naming Family Recreation Club, Inc., James Lumber and Realty Co. and its successors in interest, and the various owners of lots within the Block DX Sunnyland Subdivision ("Block DX owners") as defendants. In their complaint, the Meisses requested a declaratory judgment holding that the restrictions contained in the deed for the Overbrook Swim Club property were invalid and that the named defendants lacked standing to enforce the restrictions. After considering briefs filed by the parties, the trial court ruled that the restrictions contained in the deed for the Overbrook Swim Club property were valid and that the named defendants had standing to enforce the restrictions.
From the judgment of the trial court, the Meisses appeal.
 II
The Meisses' sole Assignment of Error is as follows:
 THE COURT ERRED IN RULING THAT THE APPELLEES HAVE STANDING TO ENFORCE THE RESTRICTIONS ON THE USE OF LAND CONTAINED IN THE CONVEYANCE TO FAMILY RECREATION CLUB, INC.
In their sole assignment of error, the Meisses argue that the restrictive covenants contained in the Overbrook Swim Club property deed were for the benefit of the grantor, the now defunct James Lumber and Realty Co., and not for the benefit of the Block DX owners. The Meisses claim that the reference to the Block DX Sunnyland Subdivision restrictions in the deed was merely a "short-hand" drafting convenience and was not intended to confer a right of enforcement to the Block DX owners. Furthermore, the Meisses argue that had the grantor intended to confer a right of enforcement to the Block DX owners, it would have included reference to the Overbrook Swim Club property deed restrictions in the Block DX Sunnyland Subdivision restrictions. In sum, the Meisses maintain that only the grantor and its successors have standing to enforce the deed restrictions.
The deed for the Overbrook Swim Club property contains the following restrictions:
 1. No building shall be erected on the said tract until the building plans have been approved in writing by the James Lumber and Realty Company. If such plans are not passed on within thirty (30) days after submission to the James Lumber and Realty Company, then the building may be erected providing it is in harmony with the existing buildings in Sunnyland Addition.
 2. This conveyance is made subject also to the reservations and restrictions set forth in the recorded plat of Block "DX" Sunnyland Addition to the Township of Springfield, Ohio; said plat being recorded in Vol. 10, Page 25, Plat Records of Clark County, Ohio; however, with the exception of the reservation and restriction set forth in paragraph numbered one (1) above, all other reservations and restrictions shall be of no force and effect unless the said tract ceases to be owned and operated by a non-profit organization whose purposes are constructing, operating, and maintaining a recreation area for the exclusive use of members and guests. Should the said tract cease to be so owned and operated, all of the said reservations and restrictions shall attach and run with the land.
The Block DX Sunnyland Subdivision restrictions establish the intent to further a general plan of development and limit the use of the land to residential purposes, with various building limitations. The Block DX Sunnyland Subdivision restrictions permit any owner of any lot in the plat, or his representatives, successors, or assigns, to enforce the restrictions against any violator.
In order for a covenant to run with the land, three conditions must be met: "(1) The intent of the original grantor and grantee must have been that the covenant run with the land; (2) the covenant must either `affect' or `touch and concern' the land in question; (3) there must be privity of estate between the party claiming the benefit of the covenant and the party who is called upon to fulfill it." (Citations omitted.) Peto v. Korach
(1969), 17 Ohio App.2d 20, 23, 46 O.O.2d 29, 30, 244 N.E.2d 502,505; see LuMac Dev. Corp. v. Buck Point Ltd. Partnership (1988),61 Ohio App.3d 558, 562, 573 N.E.2d 681. "It is well settled in Ohio that a court of equity will enforce the observance of valid restrictive covenants as to the use of property which run with the land where the grantee has notice of such covenants." (Citations omitted.) Grant v. Hickok Oil Co. (1948), 84 Ohio App. 509,512-513, 40 O.O. 9, 87 N.E.2d 708. A grantee is deemed to have notice of the restrictive covenant where it is included in his deed of conveyance, which he accepts. Id. at 513. Yet, as a general matter, "[r]estrictive covenants are to be construed strictly against the restriction and in favor of the free use of land." Nutis v. Schottenstein Trustees (1987), 41 Ohio App.3d 63,65, citing Carranor Woods Property Owners' Assn. v. Driscoll
(1957), 106 Ohio App. 95, 101, 6 O.O.2d 361, 364, 153 N.E.2d 681,685.
As a threshold matter, we find that the covenants contained in the Overbrook Pool Club property deed run with the land. The conveyance of the parcel to the Family Recreation Club, Inc., as well as its successors and assigns, was made subject to the restrictive covenants found in the deed. Thus, the use of the terms "successors" and "assigns" is applicable to the restrictions and evidences an intent for the covenants to run with the land. See LuMac Dev. Corp., supra, 61 Ohio App.3d at 563-564 ("Although the use of such terminology as `personal representatives,' `assigns,' `heirs,' or `successors' is not essential to create a restrictive covenant which runs with the land, use of these words clearly reflects upon and is indicative of the intention of the creator to do so at the time of the conveyance."), citing Siferdv. Stambor (1966), 5 Ohio App.2d 79, 86-87, 34 O.O.2d 189, 194,214 N.E.2d 106, 111. In addition, the nature of the restrictions limits the use of the land, which "affects" or "touches and concerns" the land. Finally, there was privity of estate between the original covenantor and convantee, and "[t]he litigants in this action share the original covenantor as a common predecessor in title to their respective properties." LuMac Dev. Corp.,supra, 61 Ohio App.3d at 563.
The Meisses contend that the Block DX owners cannot enforce the covenants in the deed because the Overbrook Swim Club property is not part of the Block DX Sunnyland Subdivision, and the parcel does not abut the subdivision. Further, the Meisses argue that the restrictive covenants found in the deed were for the benefit of the grantor, James Lumber and Realty, Co., and not for the benefit of the Block DX owners.
It is true that "[t]he owner of one property may enforce restrictive covenants against another property owner only where the covenants are for their mutual benefit." Nutis, supra,41 Ohio App. 3d at 65. Courts have held that restrictions made pursuant to a uniform general plan of development, such as a platted subdivision, are for the mutual benefit of all property owners in the platted subdivision, since each property owner carries the burdens of the restrictions. Id. at 65-66. Still, this is not the exclusive method of enforcing restrictive covenants.
 It is defendants' contention that only owners of property within a subdivision or allotment may enforce such covenants against other owners within the same subdivision or allotment, and that, since defendants' land has never been subdivided, plaintiffs are not within the same subdivision and are, therefore, not entitled to enforce such covenants.
 This question has not previously arisen before this court. There is language in cases from other jurisdictions which would tend to support defendants' position. See e.g., Edwards v. Surratt, 228 S.C. 512, 90 S.E.2d 906. However, from a reading of the cases, it appears that the answer to this question lies not in the ascertainment of artificial and arbitrary lines drawn upon a plat book but in the determination of the intention of the parties to be gained from the language of the instrument and the surrounding circumstances. The question to be asked is: For whose benefit was the restriction imposed? See Gammons v. Kennett Park Development Corp., 30 Del. Ch. 525, 61 A.2d 391; Russell Realty Co. v. Hall (Tex.Civ.App.), 233 S.W. 996. And see annotation, 89 A.L.R. 812.
 If the restrictive covenant was enacted for the benefit of the one seeking to enforce it, he may do so, but the burden is upon him to show that such covenant restricting the use of the lands of another was intended to be for his benefit, and that he has an equitable interest in the other person's adherence to the covenant. Missouri Province Educational Institute v. Schlect, 322 Mo. 621, 15 S.W.2d 770; Osius v. Barton, 109 Fla. 556, 147 So. 862.
 If land is developed according to a uniform general plan and the intent so to develop such land is shown, reasonable restrictive covenants may be enforced. However, enforcement does not depend upon the existence of a uniform general plan. This is merely one of the circumstances to which the court must look in determining the intent of the parties. Taylor v. Melton, 130 Colo. 280, 274 P.2d 977; Coomes v. Aero Theater and Shopping Center, Inc., 207 Md. 432, 114 A.2d 631.
Berger v. Van Sweringen Co. (1966), 6 Ohio St.2d 100, 102-103, 35 O.O.2d 127, 216 N.E.2d 54.
Based on the foregoing, any owner seeking to enforce a restrictive covenant need only show that the covenant was intended to be for his benefit and that he has an equitable interest in enforcing the covenant. Accordingly, we need only determine whether the restrictive covenant contained in the Overbrook Swim Club property deed was for the benefit of the Block DX owners in order to determine their standing to enforce the covenant.
From the express language of the restrictions, we conclude that the covenant contained in the Overbrook Swim Club property deed was for the benefit of the Block DX owners. The covenant indicates that the conveyance to Family Recreation Club, Inc. was made subject to the Block DX Sunnyland Subdivision plat restrictions, although the force and effect of those restrictions were suspended as long as the property was operated as a non-profit outdoor recreation area. The Block DX Sunnyland Subdivision restrictions demonstrate an intent to further a general plan of development and to limit the use of the land to residential purposes, with various building limitations.
From the language of these documents and the surrounding circumstances, we conclude that the intent of the parties was to limit the use of the Overbrook Swim Club property for the mutual benefit of the parcel owners and the Block DX owners. The owners of the parcel were permitted to operate a non-profit outdoor recreation area in close proximity to an exclusively residential neighborhood, while the Block DX owners were assured that the parcel would not be used for any other purpose, except residential purposes consistent with Block DX Sunnyland Subdivision restrictions.
Because we find that the restrictive covenants in the Overbrook Swim Club property deed were for the benefit of the Block DX owners, and because we find that the Block DX owners have an equitable interest in enforcing the covenants, we conclude that the Block DX owners have standing to enforce the covenants. Accordingly, the trial court did not err in reaching the same conclusion.
The Meisses' sole Assignment of Error is overruled.
 III
The Meisses' sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Jon A. Doughty
Paul R. Valente
William C. Hicks
Hon. Gerald Lorig