**KOKENGE et v WHETSTONE et**

Ohio Common Pleas, Hamilton Co

Decided Jan 18, 1938

Michael G. Heintz, Cincinnati, Richard Remke, Cincinnati, and Ragland, Dixon & Murphy, Cincinnati, for defendants.

Harmon, Colston, Goldsmith & Hoadly, Cincinnati, and Clark & Robinson, Cincinnati, for plaintiffs.

## OPINION

By MORROW, J.

Hyde Park is a Cincinnati suburb. In 1899 the Mooney subdivision of one hundred and two lots was laid out therein. These lots were sold throughout the next twenty years, the last four in 1919. All of the deeds from the subdivision owner contained the following restriction:

"Said property herein conveyed shall be used exclusively for residential purposes."

The so-called Hyde Park Square business block on Erie Avenue lies immediately to the east of the subdivision, and the block in the Mooney subdivision immediately west of Hyde Park Square on Erie Avenue contains property of the plaintiff which has been declared by ordinance of the city to be adopted to business purposes, having been changed from the classification "Residence C" to "Business B."

The plaintiffs are owners of property in this now "Business B Zone" Square in the Mooney subdivision and ask the court to remove the "residential restriction" above

quoted, and which they term "a cloud upon the title" of their property. They further assert that this restriction is no longer enforceable because of the changed condition of the neighborhood, and that there is no limit of time to such restriction.

A demurrer by defendants on the ground of misjoinder of parties plaintiff and the further ground that no cause of action is stated, was overruled by Judge Gorman, then of this court.

The joint answer of certain defendants thereupon filed, stated that all lot owners had full knowledge of the restrictions in the deeds from Mooney; said defendants have an interest in the plaintiffs' property, of great value to themselves. They say that the subdivision was developed with regard to the restriction, is now a restricted residential neighborhood, and that the cancellation of the restriction requested by plaintiffs will cause defendants irreparable damage. They ask that the petition be dismissed.

In their reply plaintiffs assert that the defendants herein have estopped themselves to set up the residential restriction because the same has been violated repeatedly with the knowledge and consent of said defendants.

The reply admits the residential restriction clause was contained in all the deeds from the original subdivision owner, and for the lots owned by both plaintiffs and defendants in this cause. There are four plaintiffs and considerably over one hundred defendants in this case. The defendants we refer to in this opinion are the owners of lots in the subdivision at present, and who have answered, some fifty-five of whom filed a joint answer which is the one referred to above. The other defendants are mortgage lien holders, etc.

The plaintiffs earnestly contend that the properties of the plaintiffs "are no longer suitable for residence purposes, but are more suitable for business purposes," as stated in their petition. Their brief sets forth: "The character of this particular neighborhood has so changed as to make it inequitable to enforce this particular restriction."

We are not attempting to review all of the evidence adduced at the trial.

The Mooney subdivision was a residential district in 1899. It is now a residential district. Time, of course, has made some changes. Residences were erected on vacant lots, as intended, and those residences were and are occupied by families. In the sense that there are residences now where there were vacant lots thirty-eight years ago, it is now more of a residential district than it was in 1899, when the subdivision was started, and in 1919, when the last lots were sold.

The fact that the subdivision adjoins a business district which might tend to expand with population growth of the suburb does not make the Mooney subdivision any the less a residential district. Hyde Park Square above referred to, and which is immediately adjacent to the east line of the Mooney subdivision, was laid out without restriction, was platted as a business square, and has been so ever since. This square was intended to contain business serving the surrounding residential territory, it has done so, and continues to do so. There is some evidence that the business district tends to recede to the east (witness the prolonged vacancy of the store on the northeast corner of the square) and also tends to overflow westwardly. The Cooper Building and two buildings west of it in the Mooney subdivision are obviously used for business purposes, and we will refer more particularly to this situation later. However, in this connection see **Price v Dryer, 19 Abs 695.** See also **Lanman v Upper Arlington Co., 5 Abs 546.**

### A

Plaintiffs assert that "permitting of the premises at the nortwest corner of Edwards Road and Zumstein Avenue, owned by Dr. Eha, to be used for business purposes over a long period of time and known to every defendant who was asked the question, constitutes an additional reason for estoppel."

Dr. Eha's property on the northwest corner of Edwards Road and Erie Avenue, in the Mooney subdivision, and across the street from the Hyde Park Square, is a large dwelling house. It has that appearance, but without knowledge of some of the defendants (as far as the evidence goes) has been rented in part to two dentists and a dental hygienist, and also is used by the doctor as his office.

It will be noted in the statement of the situation plaintiffs assert that this situation was known to every defendant who was asked the question. Obviously those defendants who were not asked a question about Dr. Eha's property would not be bound and estopped by what was done. The plaintiff has the burden of proof and has not brought home knowledge of this situation to all defendants. See **Leach v King, 16 Abs 328.**

We will discuss the matter of estoppel

later, and in connection with the Cooper Building and the Phillips and Lamb property.

We desire to note, however, in passing that these facts do not constitute an estoppel as a matter of law, and with reference to the subject matter of the instant suit even as to those defendants who knew of the situation. They may have waived any objection they might have had to the use of Dr. Eha's property as above noted, and to the extent noted, but nothing further.

In our opinion, as to those defendants who had knowledge that dental work was done on the premises, and that the property was sublet for such purposes it cannot be said that they are estop- ped to set up further violation, if any, of the residential restriction covenant. The doctor or dentist has a right to practice his profession at his home, to hang up a sign indicating that a doctor or dentist resides therein, and to receive patients, without causing his residence to lose its residential character.

The evidence to bind as a waiver should indicate the defendants know not only that dentists and doctors practiced in the building, but that they did not live there—that the residence so used was essentially an office building and not a residence of dentists and doctors who practice as well as lived therein.

There is no showing in this case that Dr. Eha has gone to any expense relying upon failure of defendants therein to object to his use of his family residence.

B

Plaintiffs' counsel also say in their brief that "defendants are estopped from enforcing said restriction against plaintiffs. Because of their, or their predecessors in title signing waivers so that the so called Cooper Building could be erected."

The Cooper Company obtained waivers of the residential restrictions from all the owners in the subdivision so as to permit the erection of a high class apartment building, five stories high, with stores for business on the first floor, at the southwest corner of Erie Avenue and Edwards Road. This was on a lot in the Mooney subdivision across the street from the Hyde Park Square.

We can take up the other proposition of plaintiffs at the same time with the question of waiver as to Dr. Eha's property and the Cooper Building, as far as the law is concerned, and the plaintiffs' statement as to this is as follows:

C

"These defendants, or their predecessors in title, having been made parties in two registration suits having to do with the removing of these identical restrictions from the two certain parcels of land, have been estopped by reason of the fact that they sat by and permitted a judgment entry to be made in each case finding said restrictions waived and no longer in force."

The Torrens Land Act proceedings as to the Phillips' property and the Lamb property on the block in question in the Mooney subdivision, and west of the Cooper building, terminated without contest in a decree which found that defendants herein (then defendants in that case) waived the residential restrictions as to those particular pieces of property and on which retail businesses have been located since.

The defendants here say that they did not know that said Torrens Land Act proceedings concerned the residential restrictions now in question, and their attempted removal thereby. One of them, the Rev. Eversull, testified that he took legal advice, and was told by a former judge (then practicing law) that the registered mail notice meant nothing as far as his property was concerned.

Under the Torrens Law the sheriff does not serve a summons against the defendants. Notice is sent by registered mail through the post office. The upshot of defendants' testimony in this case is that they did not actually know from the summons itself, or from other sources, that the Torrens Land Act proceedings comprehended the removal of the residential restrictions on the property involved. The caption of the cases indicated that they concerned the fixing of boundaries of lots owned by the plaintiffs in those cases, it appears.

D

Plaintiffs' last three propositions as above stated concern what his counsel denominates as estoppel.

It is claimed by plaintiffs' counsel that because Dr. Eha's residence is now actually a doctor and dentist's office building, and because the defendants waived their rights as to residential restrictions with reference to the Cooper building by written instrument and allowed the Phillips and Lamb property by Torrens Land proceedings to be liberated from the residential restric-

tion involved therein, that, therefore, the defendants are estopped to set up as a defense in this case the residential restriction as to Dr. Eha's property and the rest of the property in this block in the Mooney subdivision, which is owned by the plaintiffs.

E

It should not be necessary to spend much time on the proposition that restrictive covenants, such as we are ▮▮▮▮▮▮▮▮ concerned with here, are generally enforceable. See Syl. 1, in the case of Dixon v Van Sweringen Co., 121 Oh St page 56:

"Where an owner of land has adopted a general building scheme or plan for the development of a tract of property, designed to make it more attractive for residential purposes by reason of certain restrictive agreements to be imposed upon each of the separate lots sold, embodying the same in each deed, such agreements will generally be upheld, provided the same are not against public policy."

Many of the cases cited by plaintiffs' counsel in this case are not accurately in point. If Dr. Eha, for instance, had made valuable improvements in order to adapt his residence to doctors' and dentists' office purposes, and if the defendants therein knew or ought to have known of this, and stood by while Dr. Eha spent his money for such purposes, and if the defendants had then later brought injunction proceedings to enjoin Dr. Eha's use of the building thus improved for such business purposes, a case of estoppel might well be urged. However, we have a different situation here, as far as the evidence in this case goes, neither Dr. Eha, nor the other plaintiffs, have spent money disadvantageously changing their position with reference to their respective property nor otherwise have they been misled or prejudiced by reason of the claimed inaction of the defendants herein, as far as the evidence in this case indicates.

This, in the opinion of the court, is not a case of estoppel, but a claim of waiver, that is made by the plaintiff, as stated in C. J., page 1115, §118:

"While it has been said that waiver 'belongs to the family of estoppel', and the terms are often used as convertible, they are nevertheless distinguishable terms, and it has been said that waiver does not re-

quire any element of estoppel at all. There are several essential differences between the two doctrines. According to all the accepted definitions of the term 'waiver', it is of the essence of the waiver that there should be an intentional relinquishment of a known right, and necessarily therefore it assumes the existence of an opportunity for choice between the relinquishment and the enforcement of the right, while in estoppel the intention to relinquish a right is not necessarily present. Also waiver depends upon what one himself intends to do, and involves the act and conduct of only one of the parties, regardless of the attitude assumed by the other party, whereas estoppel on the other hand involves the conduct of both parties, and depends rather upon what the adversary party is induced to do. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position; and estoppel always involves this element."

Paragraph 136, page 1135, is as follows:
"In order to create an estoppel in pais the party pleading must have been misled to his injury, that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered there can be no estoppel in pais."

The same is true as to equitable estoppel. See 21 C. J. page 1133, par. 134. It is further said in 21 C. J. 1153, par. 155:
"* * * Also no estoppel arises unless it was the duty of the party against whom the estoppel was claimed to speak, and unless he had the opportunity to speak, and it is further necessary that his silence or passive conduct actually misled the other to his prejudice. There can be no estoppel where the party claiming it was wholly cognizant that he was invading the rights of another."

Mere silence without knowl-
▮▮▮▮▮▮▮▮ edge works no estoppel.

See also 21 C. J. page 1204, par. 206:
"To render the rule operative it is essential that in taking the former position the party against whom the estoppel is claimed should have acted with knowledge of his rights, and that he was aware of the facts in respect to the estoppel claimed; also that the party invoking the estoppel was misled by the acts or conduct of the party against whom the estoppel is claim-

402

ed, that he changed his position in reliance thereon, and was justified in so doing, and that he was prejudiced thereby.

"In no event can the estoppel be extended beyond the natural and reasonable import of the acts or conduct relied on to create it."

It seems unnecessary to quote at length further, but at all events, as indicated in further quotations in the same text, (21 C J. page 1216, par. 221) it is laid down that in order to claim estoppel one must alter his position in reliance on the act of the other.

The principle seems well established that it is an element of estoppel that the party claiming his opponent estopped must show that he himself has done some act to his prejudice and has been misled by the attitude of such opponent. **Ensel v Levy, 46 Oh St 255; Penn Co. v Platt, 47 Oh St 366; Kelley v Hazzard, 96 Oh St 19.**

In passing it might be pointed out that the doctrine of estoppel might be urged against the plaintiffs here.

21 C. J. p. 1209, 210 states:

"A person claiming under a deed containing a condition, exception, or reservation is bound thereby and cannot take the conveyance without assuming its obligation."

and in that connection see 21 C. J. page 1139 R. 140, entitled "Estoppel Against Estoppel."

"Where an estoppel exists against an estoppel, the matter is set at large."

* * *

### F

Waiver depends upon what the defendants intended to do—what was that? They intended to allow the erection of the Cooper Building, no more. They acted with reference to that piece of property, it was a waiver as to one lot by the signers—an act of grace—and did not constitute a waiver as to the other ninety-nine lots in the subdivision and their residential restrictions. See in this connection: **Johnson Co. v Covats, 22 C.C. 206; 12 C.D. 166;** also **National Guaranty Co. v Pfaff, 124 Oh St 34.**

Plaintiffs have quoted the testimony of defendant Clarke Firestone in their brief. Do the plaintiffs claim that Mr. Firestone, for instance, waived his right to object to the construction of a bowling alley, chain store, or skating rink next to his home on Zumstein Avenue because he waived his right to enforce the residential restriction as to the Cooper Building? See in this connection **Cross v Whitelaw, 20 C.C. (N. S.) 116; 31 C.D. 160,** also **Haas v Straus, 23 C.C. (N.S.) 547; 34 C.D. 377.**

We assert that this waiver went no further than its express terms and referred only to the Cooper Building. As stated above, the waiver depends upon what one intends to do.

The inaction of the defendants as to the Torrens Land Act proceedings, with reference to the Phillips property **Headnote 6.** and Lamb property, can hardly be called a waiver of defendant's right to set up residential restrictions as to other lots in the subdivision. In no instance did plaintiffs develop intention or knowledge on the part of the defendants to even waive their rights as to the Phillips and Lamb property. Certainly it cannot be claimed there was a voluntary consciousness to waive residential restrictions as to the rights of the property in the subdivision, and specifically, of course, the property of the plaintiffs herein. See **McGuire v Caskey, 62 Oh St 419.**

Again, may we point out that relying on the defendants' alleged waiver the plaintiffs have done nothing to their prejudice, nor have they been misled. Of course if they remove restrictions here, they may sell or rent their property for chain stores, or other "Business B" purposes, thereby obtaining considerably more than the property would bring for residence purposes.

It is no less useable for residence purposes, however, and they do not allege that they made improvements, contracts, or did anything except offer by deed a part of their frontage to widen the square, and these deeds have not been accepted by the city. In short, they can sell or rent their property for more if the residential restrictions are removed, and that is the apparent motive behind this suit.

As bearing upon the question of estoppel, the following Ohio case is interesting. **Guarantee Title & Trust Co. v Offenbacher, 6 Abs page 246.**

"It is urged also that plaintiff is estopped from enforcing the restriction by reason of other breaches of these restrictions permitted, but it no where appears that any of these restrictions are detrimental to property owners of this particular section. Consequently the plaintiff is not barred

from insisting upon the particular restrictions herein referred to."

## G
## THE EFFECT OF THE CHANGE OF ZONING

The zone change from residence to Business B property is evidence of availability of the property for business purposes, but does not bind the court in this case. The city thereby does not assume to pass upon the present effectiveness of ██ restrictive residential covenants in the deeds of the Mooney subdivision. The zoning change is a result of the efforts of certain plaintiffs herein, and others, to lay the ground work for this suit, as it appears from the evidence here, and an ensuing pronouncement by the city, through its planning commission, that the property might be adapted to business uses.

\* \* \*

## H

This instant action presents the converse of numerous cases cited by plaintiffs' counsel wherein it was sought to enjoin the erection of structures violating building restrictions and wherein there existed covenants similar to the residential restrictions in question here. In those cases plaintiffs, whose interests are similar to defendants herein had the burden of proof. Here the plaintiffs whose interests correspond somewhat to the interest of defendants therein have the burden of proof. However, the defendants here would be in a much more precarious situation in this law suit if the position of the parties were reversed and they had slept on their rights under the restrictive residential covenants until after their opponents herein had erected retail stores, restaurants, or any other structures permitted under "Business B" zoning in this city, and then had rushed into court to get a mandatory injunction ordering the demolition of such buildings. The court might well say, as was said in some cases cited by plaintiffs' counsel, "we will refuse your injunction, but you still have your right of action at law for damages for breach of covenant."

There has been erected no elevated railroad construction across this subdivision, as in the case of Thatcher v The Trustees, 87 N. Y. 311, nor any other overshadowing business or industrial improvement which would revolutionize the character of the neighborhood.

The determination of this case depends largely upon a question of fact.

We are not impressed by the Los Angeles case in which residential restrictions were cancelled as a cloud upon the title of the property. The form of of the action, and relief asked were similar to the instant action.

In the last census decade Cincinnati grew twelve and one-half per cent, while Los Angeles grew over one hundred and fifteen per cent. It is evident that momentous changes can take place within a few years in the residential districts of such a city. However, Hyde Park is still a residential community and the Mooney subdivision a residential location. Cincinnati has grown by less percentage and vastly less in terms of population numbers in the 38 years of the history of the Mooney subdivision than has Los Angeles grown in the last decade.

The question of necessity of expanding the business territory of Hyde Park Square is raised by the fact that a choice corner ground store location has been vacant in the Hyde Park Square for at least eight months. This does not make it appear as if the business in this vicinity is bursting its bounds. I refer to the location on the northeast corner of the Hyde Park Square.

## I

In conclusion we might cite some of the Ohio law with reference to this situation:

In the case of **Brown v Huber et, 80 Oh St 183,** the court went further than is necessary to go in this case because there it was sought to enjoin the violation of a certain residential restriction. Syl. 2 of that case reads as follows:

"Where such covenant or restriction is still of substantial value to the dominant lot notwithstanding the changed condition of the neighborhood in which said lot is situated, a court of equity will restrain its violation."

See also the language of the court on pp. 205-6.

It might be noted also that the English rule as to estoppel is discussed (pages 209-210). The court also says on page 210:

"\* \* \* the facts found do not in our judgment show that there has been such a radical change in the character of the neighborhood in which the plaintiff's property is situated as can be held destructive of the covenant relied on, or such as would

render its enforcement oppressive and inequitable."

We have arrived at the same conclusion with reference to the facts in the instant case.

See also Wallace v Clifton Land Co., 92 Oh St 349. I desire to quote the language of the court on page 359:

"These restrictions were not imposed for the benefit of the original proprietor, further than the fact that the general and uniform plan of restricting the allotment to residence purposes might contribute to a readier sale of the lots. The real purpose of the restrictions was to guarantee to the purchasers a quiet residence locality, where they might build their homes and live apart from the noise of manufacturing and the bustle and confusion of the marts of trade. The great majority of these purchasers undoubtedly bought with this idea in view. Their grantor kept faith and imposed like restrictions upon all the lots in this allotment that were similarly located. The purchaser who bought with the intent or purpose of disregarding the restrictions and devoting the property purchased by him to any purpose that might suit his whim or his business needs, regardless of the restrictions written in his deed, has no standing in a court of equity."

In passing we might note in the Wallace case that the restriction was to run for a period of fifty years from the date of the deeds.

The case of Hayslett v Shell Petroleum Corp., 38 Oh Ap 164, (8 Abs 649) is not an authority in opposition to defendants' claim in this case. The court stated that the changed conditions of the neighborhood substantially destroyed the value of the restrictions in that action,

"for the frank statement of counsel for plaintiff was that the land in question, because of its inutility for the purpose which the restrictions provide, would probably compel the land to remain idle for a period of eleven years."

The court said further:
"That the land is no longer suitable for single family residences, cannot be seriously doubted."

The court stated, as a fact, that the property was located in a business district.

The court in Hayslett v Shell Petroleum

Corp., 38 Oh Ap at p. 170 quoted the case of Cooper v Sanders, 30 O.L.R. 435:

"There must be clear, convincing and substantial evidence to change the character of a neighborhood to such an extent that the court can pronounce a judgment saying that the restrictions as to residences have lost their value. There must be a situation actually existing that is contrary to any sound reason for further structures with restrictions of the character stated. It should appear that there is no further reason for contemplating further structures of that character. Slight changes are not sufficient, because they do not affect the substantial character of the neighborhood."

In that case it was attempted to build a gasoline station in a residential district.

Syllabus 4 Guarantee Title & Trust Co. v Offenbacher, supra, is as follows:

"Where zoning ordinance, adopted after filing of deed which contained building restrictions, establishes lot in business district, such ordinance does not effect restriction as to building."

Finally, in the case of Dixon v Van Sweringen Co., 121 Oh St 56, where a subdivision was laid out with certain restrictions much more elaborate than in the deeds of the Mooney subdivision, and said restrictions were to run with the land for seventy-five years, the court says as to such restrictive agreement in its syllabus (2):

"In order that restrictive agreements in a deed may be declared void as against public policy, the same must violate some statute, or be contrary to judicial decision, or against public health, morals, safety or welfare, or in some form be injurious to the public good."

We have the same idea as to the facts in the instant case, and feel that the plaintiffs have failed to prove by clear, convincing and substantial evidence, or even by a mere preponderance of the evidence, a change in the character of the neighborhood.

It seems that the issue in that case was concerning the validity of restrictive covenants just as in this instant case. It seems to this court that this case has an important bearing upon the instant case, and we advert to the language on page 63:

"One of the most formal contracts known to the law is a deed for land. When the same is based upon a fair and adequate consideration, by persons competent to contract, under no duress, not overreached by fraud, and containing no provisions which affect adversely the interests of the public, the sustaining of such a contract makes an appeal to public policy quite as strong as any of the subjects within its protection."

## J

Something was said in the petition about the fact that no definite time limit was mentioned in the deed as to the residential restriction. We have noted that in the Van Sweringen case that the restrictions were for seventy-five years, and in the Wallace case for fifty years. Both concern property in Cuyahoga County, which has grown much faster than Hamilton County.

It seems to be the law, and well established, that restrictions are not void because a definite time limit has not been set as to the same. We do not understand counsel to claim that the restrictions are void because of the absence of time limit, therefore, we are not going into the authorities on this subject. The law seems well established that the restrictions are to exist as long as the same are reasonable, and that this implied limitation may be read into the covenants.

That being the law we are holding in this case, after a review of the testimony, that the restrictions are, at this time, reasonable and will be for some time in the future if the present conditions are an index to the growth and progress of the suburb of which Mooney subdivision is a part.

The plaintiffs here are four, and if their prayer was granted the entire block of Erie Avenue west of the Hyde Park Square could be developed to business purposes. The defendants who have filed a joint answer are property owners in the subdivision, who claim they bought their residences with the view to establish quiet homes removed from bustle, noise, dirt, etc., and who claim that the cancellation of the restrictions will move business just one square west of its present location and therefore just so much nearer their various homes.

It is our conclusion that the character of the neighborhood is not changed to such an extent as to make it inequitable to enforce the residential restrictions in a suit to remove a cloud from the title of property, and a decree may be taken accordingly, and that the defendants herein are not estopped to set up a residential restriction, nor have they waived the same.