SWIGART, PLAINTIFF, *v.* RICHARDS ET, DEFENDANTS.

Common Pleas Court, Licking County.

No. 46125. Decided April Term, 1961.

*Mr. Neil M. Laughlin,* for plaintiff.
*Mr. Thomas Norpell,* for defendant.

HOLTSBERRY, J. The plaintiff in her petition alleges that she is the owner of premises known as Lot Number 4 in the Lake View Addition on the edge of Buckeye Lake, as the same is set forth and described in warranty deed from Della Edith Lake, a widow, dated August 21, 1945, and recorded in Volume 367 at page 541 of the deed records of Licking County, Ohio; that in the tract of land from which plaintiff's parcel is taken there are some 45 lots, and there are various streets and avenues dividing and separating said lots; that with respect to the deeds to each of said lots, there is contained therein covenants and restrictions on the use of said premises, as well as providing for the type of structures to be erected thereon. Plaintiff further alleges that one of the covenants and restrictions, being Number 7, reads as follows:

"No building shall be erected or maintained upon any lot except one residence designed and used for occupation by a single family and not more than one and one-half stories in height on water front row only. Such residence building may include a garage as an integral part thereof."

Plaintiff further alleges that defendants herein have mailed to plaintiff a letter dated May 2, 1960, advising that they had an interest in lots number 14 through 35 in said Lake View allotment, and it was their intent to place a mobile home upon at least one of the lots thereon.

Plaintiff alleges that this would amount to a violation of the covenants and restrictions, and inflict upon plaintiff and others great and irreparable damage, and therefore asks this Court to grant an injunction. The matter came on for trial upon the pleadings, the evidence, and counsel for both sides presented thorough and forceful arguments for their respective clients.

All parties requested the Court to personally view the premises, and circumstances thereof, in question, before deciding this case, and this Court has made an extensive and lengthy view, as requested.

The question before the Court is whether or not the con-

templated action of defendants is in violation of the restrictive covenants now before the consideration of this Court. Counsel for the parties put much stress in their argument upon the meaning and application of the word "building," with reference to such a mobile home arrangement, and concede that in the Ohio statutes and cases the law as it pertains thereto seems to be non-existent.

This Court has made careful study and consideration of this case, and attempted to make an extensive search of the law of the entire United States with respect to mobile homes.

The mobile home is a novel development of the mid-twentieth century. Over the years the idea of a movable dwelling has existed as evidenced by people living in tents, covered wagons and other portable make shifts used principally by people engaged in construction work, military personnel and other persons who desired generally little of the amenities of a home. We have the advent today of the well-fitted trailer preferably called mobile homes. Wheels are sometimes removed, or often decorously hidden behind shrubbery, brick walls, or flowers. Sometimes wheels are dismounted and they are placed on cement block or other foundations. New designs of some aim to make the trailer, whose original purpose was mobility, look in fact, like a house, but considering all this, it is the view of this Court that it would take a heep o' claustrophilia to make a trailer a home.

The modern mobile home rests upon wheels erected slightly to the rear of the vehicle and equipped with pneumatic tires. The interior is divided into various rooms, usually including a livingroom, dining area, kitchenette, bathroof, and one, two or three bedrooms, depending on the size of the unit. The modern units are equipped with electric wiring, water and sewage connections, flush toilet, cooking range and the like. Manufacturers have attempted, to the obvious satisfaction of many purchasers, to compress the area of livability into the approximate space of 45 feet long by 8 feet wide. The mobile home population in our country has been estimated at the present time to be over three million. Some are of the opinion that the tendency of most modern owners is to regard mobility not as a prime consideration of ownership, but as a reserve factor.

The mobile home mode of living has created many social and economic problems resulting in a great amount of regulatory legislation over the country, conflicting and confusing court decisions, some perhaps due in some degree to unfamiliar knowledge of factors involved, and lack of guiding precedent.

This new concept of home must, at least at its present stage of development, be regulated not solely as a vehicle, or solely as a building, but as a combination of both. The very design and structure of the present day mobile home is a vehicle because of its wheels and design for highway movement by being towed by another vehicle. It is subject to the laws of the road and is expressly defined and included under certain Ohio motor vehicle statutes. (Section 4501.01 [I], Revised Code.) Said Section provides:

"(I) House trailer means any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation whether resting on wheels, jacks, or other foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways."

The taxes prescribed by Section 4503.06, Revised Code, is in the nature of a property tax and not a license fee for the privilege of occupying a house trailer. (*Stary et al*, v. *City of Brooklyn et al*, 162 Ohio St., 120; 121 N. E. [2d], 11.)

Section 4503.06, Revised Code, states in part that the revenues collected under this Section shall be in lieu of any property tax, and further provides that a house trailer bearing a license issued by any other state is exempt from payment for 90 days providing no occupant is employed in Ohio. Once paid, the certificate evidencing payment is good in any county of the State to which the trailer may be moved.

In considering such a case as the instant case, many factors such as dimension, alterations, existing applicable legislation and court decisions, the particular restrictive covenants, apparent intent of the covenants, together with all facts and surrounding circumstances must be carefully considered by a court in reaching a decision. Most mobile home cases arising today must be decided upon the particular facts and circumstances before a court.

It is stated in 15 Ohio Jurisprudence, 2nd, 106, that a fundamental consideration in construing stipulations restricting the use and enjoyment of real property is the intention of the parties as evidenced by the terms of the restrictions and the surrounding circumstances, both of the parties and subject matter.

Although the precise question of the instant case was not involved in *Stary et al, v. City of Brooklyn et al*, 162 Ohio St., 120, 121 N. E. (2d), 11 (1954), appeal dismissed, 348 U. S., 923, certain comment of the court is interesting wherein it is indicated that the use of mobile homes for permanent residence conceivably in certain instances might be a cause of slums, and the court further indicated that any measure designed to further enforce the transiency of mobile homes is in the public interest.

Careful examination of the law over the entire country reveals that the courts have been particularly unanimous in sustaining the validity of ordinances limiting the duration during which mobile homes may be occupied. Regulations relating to the mobile home as a dwelling with the progress of the coming years will no doubt require re-valuation of existing regulatory laws, zoning, and taxation measure with respect to the public welfare and the possible substantial contribution to the economy and civic life of the community.

In *Brodnick* v. *Munger*, 111 N. E. (2d), 695 (1952), it was held that building code regulations did not apply because mobile homes were essentially vehicles rather than buildings. For further reasoning along this line see the decision of the New Hampshire Supreme Court in *City of Manchester* v. *Webster*, 128 A. (2d), 924 (1957). This New Hampshire court further said: "However, each case must rest on its own bottom."

In the instant case we are concerned with restrictive covenants contained in deeds and of course, not zoning regulations. But the reasoning of all related court decisions is helpful in such a case as this. Rules for construing covenants are generally the same as those for interpreting contracts. Fundamentally, the question is what did the parties intend by the language used. It is true that where the free use of property is restricted they should be strictly construed. (175 A. L. R., 1191-1215.)

In *Pagel* v. *Gisi*, 132 Colorado, 181, 286 P. (2d), 636 (1955), the Supreme Court held that where restriction in a deed said that premises were to be used for dwelling houses only, and that dwellings erected thereon should cost not less than $4000.00, that the land was restricted exclusively to the construction of new permanent homes, and accordingly enjoined the maintenance of the trailer house for the reason that such portable unit had been designed for movement from place to place, and was not a permanent home. Also of interest is an Alaska case, reported in 106 F. Supp., 996 (D. C. Alaska, 2d Div., 1952); the Supreme Court of Iowa in *Thodos* v. *Shirk*, 79 N. W. (2d), 733; *Grange* v. *Korff*, 79 N. W. (2d), 743.

After careful consideration of this case, it is the opinion of this Court that injunction as prayed for should be, and hereby is, granted.