LuMAC DEVELOPMENT CORPORATION, Appellant,

v.

BUCK POINT LIMITED PARTNERSHIP, f.k.a.
Cedar Fair Limited Partnership, Appellee.

[Cite as *LuMac Dev. Corp. v. Buck Point Ltd.
Partnership* (1988), 61 Ohio App.3d 558.]

Court of Appeals of Ohio,
Ottawa County.

No. OT–88–16.

Decided Dec. 2, 1988.

*Frank W. Reinheimer,* for appellant.

*Dale A. Kline,* for appellee.

*Per Curiam.*

This cause comes on appeal from the Ottawa County Court of Common Pleas, wherein that court granted summary judgment in favor of appellee, Buck Point Limited Partnership ("Buck Point"), substituted defendant in the action below.

In 1963, a portion of the real estate ("Parcel 1") owned by Robert and Elsie Quinn and William O. Hemminger was sold by deed to Gar Realty Company. The deed contained six restrictions or conditions limiting the use and enjoyment of the conveyed property. Grantors retained the other portion of the land ("Parcel 2") for their own use until 1966. Parcel 2 was then sold by deed and without restriction to Cedar Fair Limited Partnership, f.k.a. Cedar Point, Inc., predecessor in interest to Buck Point. Appellant, LuMac Development Corporation ("LuMac") subsequently purchased the restricted property from Gar Realty. LuMac filed an action for a declaratory judgment on October 6,

1986, asking the trial court to declare the restrictive covenants "invalid and unenforceable" by Buck Point and to quiet title on their real property.

On February 24, 1988, the court below filed a journal entry granting summary judgment in favor of appellee. From that judgment, LuMac filed a timely notice of appeal and asserts as its assignments of error:

"I. The trial court committed error in finding that all of the restrictions continue effective.

"II. The trial court committed error in failing to define and determine if the restriction against 'trailers' and 'trailer courts' is presently effective against 'manufactured homes' and 'manufactured home parks.'

"III. The trial court committed error in failing to follow the present law that enforceability of the restriction against 'trailers' and 'trailer courts' is to be made based on the condition of the structure at the situs of its installation, not upon the condition of the structure at some prior time."

■ Summary judgment can be granted only if the evidence offered by the moving party shows that no genuine issue exists as to a material fact. Civ.R. 56(C). In determining whether summary judgment should be granted, inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378, paragraph one of the syllabus. When evidence could lead reasonable minds to reach but one conclusion, and that conclusion is adverse to the non-moving party, then and only then should summary judgment be granted. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Accordingly, in reviewing the trial court's granting of a summary judgment to Buck Point, this court must ascertain whether any genuine question as to any material fact was raised by LuMac or if, as a matter law, Buck Point was entitled to a summary judgment.

Although couched in three assignments of error, LuMac essentially asks this court to determine two issues. The threshold question to be considered is whether the restrictive covenant precluding the placement of "trailers" or "trailer courts" on the property of LuMac was a covenant that runs with the land.

LuMac contends that the disputed restrictive covenant was personal and of benefit only to the grantors who have, since the establishment of the restriction, conveyed their property to Buck Point. The material clause in the deed imposing restrictions upon appellant's land reads as follows:

"As a part of the consideration supporting this conveyance, the Grantee, its successors and assigns covenant and agree to hold the herein described parcel

subject to the following covenants, conditions, restrictions, limitations and reservations:

"a) No trailers or trailer courts shall be placed or established upon said premises or suffered to remain thereon.

"b) No road, way or bridge shall be built, established, or suffered to remain, from said premises westerly across the Kirk Ditch, so-called.

"c) No business for the retail sale of food, beer, wine, beverages, bait, ice, novelties or other like merchandise shall be established, or suffered to remain within an area of 500 feet to the north and 500 feet to the south of Grantors' existing carry-out store and extending 400 feet west of the centerline of Buck Road within said north and south limits, for a period of ten (10) years from the date of conveyance of said premises to Grantee.

"d) Grantors reserve, for themselves, their heirs and assigns, the right, easement and privilege to use for drainage purposes the existing ditch along the westerly boundary of said premises for the benefit of their premises adjoining premises sold herein upon the North, together with the right of entry upon said premises sold herein for the purpose of repairing said ditch and removing obstructions.

"e) Grantors reserve crops growing upon said premises together with the right to remove same.

"f) Said premises are subject to all legal highways."

■ The prerequisites for a covenant to run with the land are:

" ' * * * (1) The intent of the original grantor and grantee must have been that the covenant run with the land; (2) the covenant must either "affect" or "touch and concern" the land in question; (3) there must be privity of estate between the party claiming the benefit of the covenant and the party who is called upon to fulfill it. 21 Corpus Juris Secundum 923, Covenants, Section 54; 20 American Jurisprudence 2d 600, 601, Covenants, Section 30; 15 Ohio Jurisprudence 2d 19–22, Covenants, Sections 16–19.' " *Peto v. Korach* (1969), 17 Ohio App.2d 20, 23, 46 O.O.2d 29, 30, 244 N.E.2d 502, 505. See, also, *Hughes v. Cincinnati* (1964), 175 Ohio St. 381, 385, 25 O.O.2d 378, 381, 195 N.E.2d 552, 555. See, generally, 10 Ohio Jurisprudence 3d (1979) 239, Building, Zoning and Land Controls, Section 55, and the cases cited therein at fn. 33.

■ In applying this standard, we conclude that the restrictions written into the deed conveying Parcel 1 of grantors' property to Gar Realty were

covenants that run with the land.[1] The restriction precluding the establishment of a "trailer court" or placement of a "house trailer" on the property is a burden upon the conveyed property ("servient estate") in order to benefit the property from which it was taken ("dominant estate"). *Hughes, supra,* at 385, 25 O.O.2d at 381, 195 N.E.2d at 555. Therefore, the restriction both "touches and concerns" the land, increasing the value of the unrestricted property and decreasing the value of the restricted property by limiting its use. *Id.*

In addition, privity existed between the original covenantor and covenantee. The litigants in this action share the original covenantor as a common predecessor in title to their respective properties. Thus, LuMac, as the ultimate purchaser of the servient estate, is in privity with Buck Point, the current owner of the dominant estate. *Peto, supra,* 17 Ohio App.2d at 24, 46 O.O.2d at 31, 244 N.E.2d at 506. Hence, LuMac, upon purchase of the parcel subject to restrictions, obtained not only the rights incident to that ownership but also the obligations imposed by the covenants. *Id.* See, also, *Berardi v. Ohio Turnpike Comm.* (1965), 1 Ohio App.2d 365, 370, 30 O.O.2d 385, 389, 205 N.E.2d 23, 28.

Moreover, it is clear that the intent of the parties at the time of the creation of the restrictive covenants was that these restrictions run with the land. In ascertaining intent, restrictive covenants are to be read as a whole. *Slife v. Kundtz Properties, Inc.* (1974), 40 Ohio App.2d 179, 184, 69 O.O.2d 178, 181, 318 N.E.2d 557, 561. Nonetheless, LuMac urges this court to view each of the six conditions imposed by the grantors separately to determine intent. However, the intent of the parties is evidenced in the main paragraph, *i.e.,* the first paragraph, which governs *all six* "covenants, conditions, restrictions, limitations and reservations." Said paragraph contains the phrase " * * * [t]he Grantee, its successors and assigns." Although the use of such terminology as "personal representatives," "assigns," "heirs," or "successors" is not essential to create a restrictive covenant which runs with the land, use of these words clearly reflects upon and is indicative of the intention of the creator to do so at the time of the conveyance. *Siferd v. Stambor* (1966), 5 Ohio App.2d 79, 86–87, 34 O.O.2d 189, 194, 214 N.E.2d 106, 111. See, also, *Hughes, supra,* 175 Ohio St. at 384–385, 25 O.O.2d at 380, 195 N.E.2d at 555;

---

1. Although the main thrust of LuMac's arguments concerns the restriction involving "trailers" and "trailer courts," the other five restrictions are briefly addressed. LuMac claims that only restriction (d) benefits the land. LuMac apparently believes that any limitation on land that benefits the grantor must be deemed personal. However, for reasons previously discussed, a reading of the restrictions as a whole leads to the inevitable conclusion that all are covenants which run with the land.

*Stapleton v. Columbia Gas Transmission Corp.* (1981), 2 Ohio App.3d 15, 19, 2 OBR 16, 20, 440 N.E.2d 575, 579; *Peto, supra,* 17 Ohio App.2d at 23, 46 O.O.2d at 30, 244 N.E.2d at 505. See, also, *Hi–Lo Oil Co., Inc. v. McCollum* (1987), 38 Ohio App.3d 12, 526 N.E.2d 90 (covenant enforced absent assignee language). We find that the use of the terms "assigns" and "successors" in the subject conveyance is applicable to the disputed restriction, as well as the remaining five conditions, and clearly reflects that the grantors intended that this provision run with the land.

■ LuMac asserts that in order to overcome public policy favoring the unrestricted use of land, one must establish a "general scheme or plan" in the development of the property and notice of the scheme or plan must be given to the purchaser. See *Bailey Dev. Corp. v. MacKinnon–Parker, Inc.* (1977), 60 Ohio App.2d 307, 310, 14 O.O.3d 277, 280, 397 N.E.2d 405, 408. We find this principle inapplicable to the case at bar. General schemes are necessary when a grantor plats his property and sells the resulting lots to separate individuals. In other words, the development of the plan is essential when dealing with community subdivisions where the grantor imposes restrictions for the benefit of the entire tract. See, *e.g., Berger v. Van Sweringen Co.* (1966), 6 Ohio St.2d 100, 35 O.O.2d 127, 216 N.E.2d 54; *Beckett Ridge Assn.–I v. Agne* (1985), 26 Ohio App.3d 74, 26 OBR 248, 498 N.E.2d 223; *Bailey Corp., supra.* See, generally, 10 Ohio Jurisprudence 3d (1979) 245, Building, Zoning and Land Controls, Sections 60 and 61. In the case *sub judice,* the grantors originally sold one large parcel of their land and retained the remainder for themselves. The restrictions placed upon the conveyed real estate were for the benefit of the retained property only. LuMac's land was not part of a "tract" development; therefore, evidence of a "general scheme" was not required. In the absence of other evidence that the disputed restrictions are violative of public policy or are illegal, we therefore conclude that said restrictions are valid. See *Stines v. Dorman* (1874), 25 Ohio St. 580, 583.

■ LuMac further argues that the restrictive covenants have terminated due to a passage of time. However, restrictive covenants may exist for so long as the estate to which they are annexed endures. *Slife, supra,* 40 Ohio App.2d at 185, 69 O.O.2d at 182, 318 N.E.2d at 562. Their only limitation is reasonableness. *Kokenge v. Whetstone* (C.P.1938), 26 Ohio Law Abs. 398, 405, 4 Ohio Supp. 207, 215, 11 O.O. 213, 220, affirmed (1938), 60 Ohio App. 302, 14 O.O. 137, 20 N.E.2d 965. LuMac has provided no evidence that the conditions placed upon their land are not reasonable. Therefore, the trial court did not err in finding that the restrictions continue to be valid. Accordingly, LuMac's first assignment of error is found not well-taken.

■■■■ In its second and third assignments of error, LuMac essentially requests that this court determine that "house trailer"[2] and "trailer court" do not have the same meaning as "manufactured home" and "manufactured home park."[3]  LuMac premises its arguments on R.C. 4501.01.

In 1963, when the deed involved in this case was drafted, R.C. 4501.01(I) defined a "house trailer" as:

" 'House trailer' means any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways."  130 Ohio Laws 1031, 1032.

Currently, R.C. 4501.01(O), as effective September 20, 1984, provides that:

" 'Manufactured home' means any nonself-propelled vehicle transportable in one or more sections, which in the traveling mode, is eight body feet or more in width or forty body feet or more in length or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein.  Calculations used to determine the number of square feet in a structure are based on the structure's exterior dimensions measured at the largest horizontal projections when erected on site.  These dimensions include all expandable rooms, cabinets, and other projections containing interior space, but do not include bay windows."

The term "house trailer" is no longer statutorily defined.

■■■■ In construing deed restrictions limiting the use and enjoyment of real property, the intention of the parties as evidenced by the terms of the restriction and the surrounding circumstances, both of the parties and the subject matter, at the time of execution is the fundamental consideration. *Hitz v. Flower* (1922), 104 Ohio St. 47, 57, 135 N.E. 450, 453.  The ordinary rules of construction applicable to the interpretation of contracts are to be

---

2.  Both parties admit, and we agree, that in the context of the restriction and the circumstances surrounding the original grant, the grantors intended that "trailer" be construed as "house trailer."

3.  See R.C. 3733.01(A), effective September 16, 1963, 130 Ohio Laws 857, and R.C. 3733.01, effective February 25, 1987, for the definitions of "house trailer park" and "manufactured home park."  The meanings of both are very similar.

applied when interpreting restrictions. *Id.* See, also, *Swigart v. Richards* (C.P.1961), 87 Ohio Law Abs. 37, 41, 178 N.E.2d 109, 112; *McBride v. Behrman* (1971), 28 Ohio Misc. 47, 50, 57 O.O.2d 77, 80, 272 N.E.2d 181, 184.

The ordinary meaning of both "house trailer" and "manufactured home" as defined in the Ohio Revised Code is essentially the same. Both relevant code sections refer to nonself-propelled vehicles which may be used as dwelling places. The 1984 version of the code also includes other terms unknown in 1963; to wit, recreational vehicle, travel trailer, motor home, and truck camper. None of the definitions of these latter terms encompasses the meaning intended by the grantors in the case at bar.[4] In our opinion, it is obvious from the circumstances at the time of conveyance that the grantors intended that the grantees be unable to place vehicles designed to be used as dwelling places on the conveyed land. The fact that the nomenclature for such vehicles has changed does not serve to defeat the intent of the grantors, but rather reflects the growth of the relatively recent concept of a "mobile home mode of living." *Swigart, supra,* 87 Ohio Law Abs. at 40, 178 N.E.2d at 111. See, also, *McBride, supra,* 28 Ohio Misc. at 49, 57 O.O.2d at 79, 272 N.E.2d at 183. The 1984 amendment of the Revised Code augments the definitions of former R.C. 4501.01 rather than nullifying them. We, therefore, conclude that "manufactured home," as defined in R.C. 4501.01(O), is inclusive of the formerly used term "house trailer."

LuMac last argues that the enforceability of the restriction against house trailers must be based upon the structure's condition at the situs, *i.e.,* the structure when placed upon the servient estate can be deemed a "permanent" dwelling and, therefore, can no longer be classified as a house trailer, mobile home or the like.

The trial court failed to determine this issue. The decision as to whether the use of a particular type of "mobile home" as a dwelling violates a specific restrictive covenant rests upon the facts and circumstances before the court.

---

**4.** R.C. 4501.01 defines the relevant terms as follows:

"(Q) 'Recreational vehicle' means a vehicular portable structure designed and constructed to be used as a temporary dwelling for travel, recreational, and vacation uses and being classed as follows:

"(1) 'Travel trailer' means a nonself-propelled recreational vehicle not exceeding an overall length of thirty-five feet, exclusive of bumper and tongue or coupling, and includes a tent type fold-out camping trailer as defined in division (S) of section 4517.01 of the Revised Code.

"(2) 'Motor home' means a self-propelled recreational vehicle constructed with permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping.

"(3) 'Truck camper' means a nonself-propelled recreational vehicle, without wheels for road use, and designed to be placed upon and attached to a motor vehicle. Truck camper does not include truck covers which consist of walls and roof but do not have floors and facilities for using same as a dwelling."

*Swigart, supra,* 87 Ohio Law Abs. at 40, 178 N.E.2d at 111; *McBride, supra,* 28 Ohio Misc. at 50, 57 O.O.2d at 80, 272 N.E.2d at 184. See, generally, Annotation (1986), 49 A.L.R. 4th 1018. LuMac has not yet placed a "manufactured home" on the servient property. Furthermore, LuMac has set forth no operable facts indicating that the restrictive covenant concerning "house trailers" should not be applicable to the "manufactured homes" that the corporation desires to place upon its property.[5] Nor has LuMac offered any evidence showing that the covenant is no longer of substantial value to the dominant estate.[6] See *Winfrey v. Marks* (1968), 14 Ohio App.2d 127, 128–129, 43 O.O.2d 307, 308, 237 N.E.2d 324, 325. LuMac requested of the court below only that it determine whether the restrictive covenant in the deed is enforceable as written. That court properly determined that said covenant was effective and valid. Because LuMac failed to offer specific facts showing a genuine issue for trial on these matters, the trial court did not err in failing to address these issues in its decision. *Benjamin v. Deffet Rentals, Inc.* (1981), 66 Ohio St.2d 86, 91, 20 O.O.3d 71, 75, 419 N.E.2d 883, 886. Hence, we conclude that reasonable minds, viewing the evidence offered in a light most favorable to the non-moving party, could come to but one conclusion, and that conclusion is adverse to LuMac. Accordingly, LuMac's second and third assignments of error are found not well-taken.

Upon consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is affirmed. Costs of this appeal assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., CONNORS and A.R. RESNICK, JJ., concur.

---

**5.** LuMac merely states the type of foundation used and the condition, *i.e.,* permanence of the structure, at its situs control its classification. However, no specific facts concerning the "manufactured homes" LuMac proposes to place on Parcel 1 were ever offered below.

**6.** LuMac did offer particular facts showing that the use of Parcel 2 has changed. However, this is not controlling in determining whether a restrictive covenant should be declared unenforceable. The applicable test is substantial change of conditions in the surrounding area which would result in a loss of any beneficial value to the dominant property. *Winfrey, supra.* LuMac failed to produce any evidence to show that the covenant is of no value to the dominant lot, Parcel 1.