OPINION
Plaintiffs-appellants, Gary L. Peters, Jerry D. Eck, III, Cheryl R. Eck, Larry R. Doty, Ruth P. Doty, Bobby L. Arthurs and Beverly J. Arthurs appeal the decision of the Preble County Court of Common Pleas granting summary judgment to defendant-appellee, Marsheda Nelson[1] in a dispute concerning a restrictive covenant in the chain of title of a parcel of real estate. We affirm the decision of the trial court.
On December 31, 1945, a deed was recorded in which Albert and Laura Sandlin transferred legal title of a one hundred five acre parcel of land located in Preble County (the "105 acres") to Frank and Stella Roberts. On December 30, 1965, by deed, the Roberts transferred the 105 acres to George E. and Hilda H. Shumaker. On January 21, 1967, the Schumakers apparently planned to deed the 105 acres back to the Roberts. The Roberts then sought to deed the 105 acres to Allen E. and Alice M. Seals. However, the deed from the Schumakers to the Roberts was recorded at 9:26 a.m. The deed from the Roberts to the Seals was recorded one minute earlier, at 9:25 a.m. Thus, the Roberts did not have legal title of the 105 acres when it was "transferred" to the Seals. As a corollary, when the deed from the Schumakers to the Roberts was recorded at 9:26 a.m., the Roberts had legal title to the 105 acres.
Although they did not have legal title, the Seals deeded the land to Donald Sprowls, Stephen F. Gallagher, William J. Crawford, Martin Max and Donald E. Hawkins (collectively, "Sprowls") on May 13, 1972. Sprowls transferred 5.023 acres of the 105 acres, by deed, to Henry C. and Ethel M. Spencer on October 9, 1973 as part of a residential development. This deed included certain restrictive covenant language:
 As a part of the consideration for this conveyance, the Grantees for themselves and their heirs, devisees, successors, and assigns, to hold said premises hereby conveyed upon the following terms and covenants; (1) said premises shall be used exclusively for residential purposes; (2) there shall not be erected, placed, or suffered to remain on said premises any building or structure other than one single family dwelling house with garage and other out buildings apertinent [sic] thereto including barns, stables, and the like to the rear of said dwelling house. * * *. (Emphasis added.)
The Spencers transferred the 5.023 acres, by deed, to David and Charles Melton on August 27, 1974. Following Charles Melton's death, a one-half interest in the land was transferred by the probate court to Margaret S. Melton on November 12, 1985. On December 3, 1985, David Melton and Margaret S. Melton, who each had a one-half interest in the land, transferred it to James and Joyce Nelson.
Of course, due to the fact the two deeds were recorded out of order on January 21, 1967, the Roberts had legal title to the 105 acres since that date. When Frank Roberts died testate on March 4, 1984, he left all of his assets to his wife, Stella. A title search by James and Joyce Nelson revealed the error in filing the deeds on January 21, 1967. On March 28, 1996, Stella Smith, formerly Stella Roberts, and her present husband, Joe Smith, transferred the land to James and Joyce Nelson by quitclaim deed. Finally, on April 1, 1998, two acres of the 5.023 acres was transferred from the Nelsons to Marsheda Nelson, the Nelsons' daughter.
When Marsheda attempted to construct a residence on the two-acre plat, appellants claimed that the restrictive covenant in the October 9, 1973 deed prohibited this action because a residence was already on the 5.023 acres, before the property was split by the Nelsons. Appellants, neighbors of Marsheda Nelson, filed a complaint for declaratory judgment, and a temporary and permanent injunction. Appellees filed for summary judgment, which was granted by the trial court. From this decision, appellants filed a timely notice of appeal and present one "issue"[2] for our review:
 THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
Appellants contend that the land remains subject to the restrictive covenant of only one single-family dwelling house allowed on the property. In order for the restrictive covenant at issue to be valid upon a grantee, the following elements must be established: (1) "the restrictions must be part of the general subdivision plan, applicable to all lots in the subdivision."Maasen v. Zopff, Trustee (July 26, 1999), Warren App. Nos. CA98-10-135, CA98-10-138, unreported, at 8; (2) "lot purchasers must be given adequate notice of the restriction"; id.; (3) "the restrictions must be in accord with public policy * * *"; id.; (4) "the restriction cannot be implied, but must be express"; id.; and (5) "the restrictions must run with the land, and therefore mustbe inserted in the form of covenants in the owner's chain oftitle. Otherwise subsequent purchasers are not bound." Id. at 8-9, citing Davidson v. Buckeye Homes, Inc. (1942), 37 Ohio Law Abs. 570. Thus, privity of estate between the original grantor and subsequent grantees is generally required to enforce a restrictive covenant. See LuMac Dev. v. Buck Point Ltd.Partnership (1988), 61 Ohio App.3d 558, 562.
A settled rule of property law in Ohio is "that where one has sold with warranty what he does not own but subsequently acquires, the grantee takes the title by estoppel. Broadwell v. Phillips
(1876), 30 Ohio St. 255, 261; Garlick v. Pittsburgh WesternRailroad (1902), 67 Ohio St. 223. The grantee acquires an equitable or "estoppel estate" which entitles the grantee to possession of the property, but without legal title to the property.
When the restrictive covenant in question was written, the grantor had not acquired legal title, but remained part of the chain of equitable title to the property. When a title examination was completed on behalf of James and Joyce Nelson, it was revealed that legal title remained, and had remained since January 20, 1967, with Stella Roberts.[3] Thus, only when Stella Roberts and her current husband transferred the property by quitclaim deed to the Nelsons, did the legal title and equitable title in the property merge.
Thus, the question is whether a restrictive covenant can be valid to subsequent grantees when the grantor of the property which included the restrictive covenant only had equitable title to the property. We conclude that, at least on this set of facts, the answer is no. Since Sprowls was not in the legal chain of title to the property, they were not in privity with appellee, the ultimate possessor of legal title to the disputed property. Therefore, the restrictive covenant did not run with the land and cannot bind subsequent possessors of legal title to the property.
Appellants argue that equity may provide an exception to the rule that privity is required for a restrictive covenant to run with the land. In support of this proposition, appellants refer to the Supreme Court of Ohio's decision in Pittsburgh C. St. L.Ry. v. Bosworth (1888), 46 Ohio St. 81. In Bosworth, the court held that an agreement to maintain fences along a railroad right of way was enforceable despite the fact the agreement did not state the obligation was intended to run with the land. In reviewing the syllabus of this case, we believe it should be limited to its facts. The general rule is that privity of estate is required for a restrictive covenant to run with the land.LuMac, 61 Ohio App.3d at 562. Therefore, since the restrictive covenant was included in a transfer in which the grantor lacked legal title, it is not enforceable against subsequent grantees, including appellee. Thus, the assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] The complaint also lists John Doe, spouse of Marsheda Nelson, as an unnamed defendant. However, the record does not indicate he was ever served with the complaint and is, therefore, not a party to this appeal.
[2] Appellant has failed to file any assignments of error as required by the Ohio Rules of Appellate Procedure. App.R. 16(A)(3). Nevertheless, in the interest of deciding this appeal on the merits, we consider appellants' "issue" as an assignment of error.
[3] Stella Roberts acquired Frank Roberts' share of the property upon his death.