Vukovich, Judge,
dissenting.
{¶ 60} In construing any written instrument, the parties’ intent is determined by evaluating whether there is ambiguity in the language. The language is unambiguous if it is plain, clear, definite, and subject to only one interpretation. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246, 374 N.E.2d 146. In such a ease, the interpretation is a matter of law, parol evidence cannot be admitted to alter the expressed intent, and the language is applied as written. Davis v. Loopco Indus., Inc. (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144.
{¶ 61} On the other hand, the language is ambiguous if it is unclear, indefinite, reasonably subject to dual interpretations, or of such doubtful meaning that reasonable minds could disagree as to its meaning. Frederick v. Cocca Dev., Ltd., 7th Dist. No. 05MA107, 2006-Ohio-7273, 2006 WL 4642671, ¶ 43. In many written-instrument cases, the interpretation of ambiguous language is a factual question to be determined by the trier of fact. Id. at ¶ 45. However, in dealing *350 with deed restrictions, any ambiguity results in the employment of a whole different rule of construction. Id.
{¶ 62} Where the words of a deed restriction are equally capable of more than one interpretation, the interpretation will be adopted that least restricts the free use of the land. Houk v. Ross (1973), 34 Ohio St.2d 77, 90-91, 296 N.E.2d 266; Loblaw, Inc. v. Warren Plaza, Inc. (1955), 163 Ohio St. 581, 592, 127 N.E.2d 754, citing Frederick v. Hay (1922), 104 Ohio St. 292, 297-298, 135 N.E. 535. All doubt is to be resolved in favor of the free use of land by the landowner. Id., citing Hunt v. Held (1914), 90 Ohio St. 280, 282-283, 107 N.E. 765. Restrictions on the use of property are not favored by the law, and thus, such restrictions are strictly construed against limitations upon use. Driscoll v. Austintown Assocs. (1975), 42 Ohio St.2d 263, 276-277, 328 N.E.2d 395. Thus, in the case of an ambiguity in a deed restriction, the trial court lacks the discretion it typically has when construing ordinary contractual language that is ambiguous.
{¶ 63} The deed restriction at issue states: “No house trailer, whether occupied or vacant, shall be kept, parked or stored on the premises.” The parties dispute whether a motor home is encompassed in the definition of house trailer. Appellants state that under either the common dictionary definition or the prior statutory definition, their motor home is not a house trailer. As appellants concede, at the time the restrictions at issue were recorded, the term “house trailer” was statutorily defined in the motor-vehicle laws as “ ‘any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways. ’” See LuMac Dev. Corp. v. Buck Point Ltd. Partnership (1988), 61 Ohio App.3d 558, 565, 573 N.E.2d 681 (evaluating the statutory definition of house trailer at the time of a 1963 deed but then, pointing out that the term is no longer statutorily defined), citing 130 Ohio Laws 1031, 1032.
{¶ 64} Appellants urge that their motor home does not fall under this prior statutory definition of house trailer because it is self-contained and thus need not be connected to utilities to permit the use for human habitation. However, the portion of the definition regarding connection to utilities does not require actual connection at all times of habitation. For instance, even though a motor home is self-contained, it must eventually be connected either directly or indirectly with external water and sewage utilities. Moreover, the fact that it can be connected to utilities such as electric, water, and sewer means that it fits this definition. That is, it is designed to permit the use for human habitation when connected to indicated utilities; merely because it is also designed to permit human habitation *351 after the utilities have been disconnected does not erase the existence of the former feature. Thus, I agree with the majority that at the time the restrictions here were drafted and recorded, a motor home fit the statutory definition of house trailer.
{¶ 65} However, a statute that previously existed in the motor-vehicle code does not necessarily govern the language of a real-estate deed restriction. As appellees conceded at oral argument and as the majority agrees, the legislative definition of a term in the motor-vehicle statutes is not necessarily the common and everyday meaning of a term used in a deed. True, in some sources, a house trailer is listed as a synonym for motor home. See, e.g., http://thesaurus.com; www.merriam-webster.com (the first known use of the term “motor home” is said to be 1965 and is synonymous with both recreational vehicle and trailer).
{¶ 66} However, other sources suggest that a house trailer is pulled by another vehicle. As appellants point out, Webster’s Dictionary describes a house trailer as a nonautomotive vehicle designed to be hauled by road and then serve as a dwelling. See www.websters-online-dictionary.org (defining “house trailer” as “[a] wheeled vehicle that can be pulled by a car or truck and is equipped for occupancy”). “House trailer” is elsewhere defined as “a trailer fitted with accommodations for sleeping, eating, washing, etc.” and is said to have originated between 1935 and 1940. See www.dictionary.com (as compared to a motor home, which is defined as a vehicle like a bus or truck with a compartment for living). This definition requires a review of the definition of “trailer”. “Trailer” itself has been typically associated with a vehicle that is not powered itself but rather is drawn by an independent powered vehicle. See, e.g., Black’s Law Dictionary (5th Ed.1979) 1340. Even in the 1965 dictionary used by the majority, the definition of “trailer” does not specify that it includes a self-propelled vehicle. Plus, who is to say that a deed drafter in 1965 has the brand-new dictionary. A 1949 Webster’s dictionary defines “trailer” as follows:
{¶ 67} “A vehicle or in one is a succession of vehicles hauled, usually, by some other vehicle. Specific.: a A car on a street-car line pulled by another car. b A light two-wheeled car pulled by bicycle or motorcycle, etc. c A nonautomotive highway vehicle designed to be hauled, as by a tractor, a motor truck, or a passenger automobile.”
{¶ 68} In pondering the terms “trailer” and “house trailer,” I believe that one reasonable person could conclude that “house trailer” includes appellants’ motor home but another reasonable person could conclude that “house trailer” does not include appellant’s motor home. Notably, the magistrate originally found that the motor home was not prohibited by the restriction and changed the decision only upon a cryptic remand by the trial court. In considering what an ordinary person would answer when asked about the terms and in looking at the various *352 dictionary definitions, I believe that the term “house trailer” is ambiguous when applied to a motor home. Because it is ambiguous, the term should be construed in favor of the free use of the land so that the motor home is not prohibited from being parked or stored on the property. Thus, I dissent.