PETO ET AL., APPELLEES, *v.* KORACH, APPELLANT, ET AL.

(No. 29178—Decided January 16, 1969.)

*Messrs. Miller, Folk & Schutz,* for appellees.
*Messrs. Burke, Haber & Berick,* for appellant.

SILBERT, J. This is an appeal on questions of law from a judgment for plaintiffs in the Municipal Court of Cleveland. Trial was had on the following stipulation of facts:
"Prior to May 7, 1948, the defendant, Ernest Korach [appellant herein], was the owner of sub lot No. 201 fronting on Tillman Avenue in Cleveland, Ohio, which sub lot was improved by two residences; the one on the front

(southerly portion) of the lot being then and now known as 5116 Tillman Avenue, and the one at the rear (northerly portion) of the lot being then and now known as 5114 Tillman Avenue.'' The defendant-appellant divided the parcel into two portions, each of them containing a residence, and conveyed the portions, by separate deeds, both dated May 7, 1948, to different grantees.

The front, or southerly portion, which we shall designate as parcel No. 1, was eventually conveyed by Korach's grantee to Alex E. Peto and Donna Peto, plaintiffs, appellees herein. The deed by which Korach had conveyed this portion referred to the other (retained) portion (hereinafter designated parcel No. 2) in a clause reserving an easement over parcel No. 1. The language of such clause is as follows:

"* * * reserving unto the grantor, his heirs and assigns, the right and easement to use in common with the grantees herein, their heirs and assigns, the water lines and sewer as now established, and connecting with the main water line and public or main sewer in Tillman Avenue, and the right and easement to lay, maintain, operate, repair and remove over and through the premises above conveyed from premises of grantor adjoining premises above conveyed on the northerly line thereof, a sewer and water line to said Tillman Avenue, at any and all times, at the option of the grantor herein, his heirs and assigns, *and grantor, his heirs and assigns, agrees to share one-third of the cost of the upkeep and maintenance of the sewer and water facilities and agree [sic] to share one-third of the cost of the use of the sewer and water facilities, * * *.*'' (Emphasis added.)

Defendant then conveyed the northerly portion (parcel No. 2), which, through a subsequent series of conveyances, passed to Isabelle Chessler, Frank Gallo and Mary Gallo, who were the co-owners of that portion prior to and during October and November, 1964, during which period arose the issues involved herein. During this same period, defendant Carol Pless was in possession of parcel No. 2. The nature of her interest, if any, is not clear, but it is

certain that she was not one of the record owners of the realty.

In October 1964, the sewer line serving both parcels became blocked, and repairs were needed. The plaintiffs, who owned parcel No. 1, contracted for repairs.

Before the sewer repair work was commenced, defendant Carol Pless was notified. When the work was concluded, all the defendants received demands from the plaintiffs for payment of one-third of the cost.

Ultimately, plaintiffs sued Isabelle Chessler, Frank Gallo and Mary Gallo, who, at the time of the repairs, were co-owners of parcel No. 2; Carol Pless, who at that time was in possession of that parcel, but who was not an owner of record; and Ernest Korach, the original grantor of both parcels, who had long since divested himself of any interest in either parcel.

The petition alleged the above facts, and prayed for judgment in an amount equal to one-third of the cost of the sewer repairs together with interest. The trial court found for the plaintiffs against all of the defendants. Defendant Korach brings this appeal.

We are confronted with a problem which can be summed up in one lengthy question, as follows: Where a grant of realty reserves to the grantor, his heirs and assigns, an easement in the land granted, which easement pertains to serving an adjacent parcel of realty retained by the grantor, and where such grantor covenants for himself, his heirs and assigns in the deed of conveyance to share in the cost of upkeep and maintenance of the part of the granted parcel to which the easement applies, is such a covenant enforceable against such grantor *in perpetuum*, or is his liability under the covenant ended when he divests himself of ownership in the dominant (retained) estate?

The resolution of this problem is contingent mainly upon the question whether the covenant involved herein is a real covenant, which runs with the land, or whether it is a personal covenant establishing continuing liability in the original covenantor.

"The common-law test of a covenant running with the

land requires that its performance or nonperformance must affect the nature, quality, value, or mode of enjoyment of the estate demised to which it must relate." 21 Corpus Juris Secundum 923, Covenants, Section 54. The generally-prescribed requisites for a covenant to run with the land are as follows: (1) The intent of the original grantor and grantee must have been that the covenant run with the land; (2) the covenant must either "affect" or "touch and concern" the land in question; (3) there must be privity of estate between the party claiming the benefit of the covenant and the party who is called upon to fulfill it. 21 Corpus Juris Secundum 923, Covenants, Section 54; 20 American Jurisprudence 2d 600, 601, Covenants, Section 30; 15 Ohio Jurisprudence 2d 19-22, Covenants, Sections 16-19.

The basic requirement of intent of the parties was set forth by the Ohio Supreme Court in 1859:

"* * * whether it [a covenant] does so inhere [in the land] as to give a right and create an obligation in the case of assignees, we must look at the intent of the parties creating the estate. The law must say that it may inhere, and the parties must say that it shall inhere." *Masury* v. *Southworth*, 9 Ohio St. 340, 348.

It is well-settled that a covenant may run with land even where the original covenant does not use the words "heirs," "assigns," or "successors." *Masury* v. *Southworth*, 9 Ohio St. 351-352; *Johnson* v. *American Gas Co.* (1917), 8 Ohio App. 124 (paragraph one of the syllabus); *Berardi* v. *Ohio Turnpike Comm.* (1965), 1 Ohio App. 2d 365, 369. However, while the use of such words is not essential to enable a covenant to run, the use of those words "does clearly reflect upon and is indicative of the intention of the grantor at the time of the conveyance." *Siferd* v. *Stambor* (1966), 5 Ohio App. 2d 79, 86-87. Here, we have the explicit use of the phrase, "heirs and assigns" in the covenant in question. Although the use of the words is not determinative of whether it was the intent of the parties that the covenant run, the existence of the words is properly considered.

A factor relating both to the intent of the parties and to the question whether the covenant touches and concerns the land is the fact that the easement involved herein merely permitted sewer pipes across the covenantee's land (parcel No. 1) to connect the retained estate (parcel No. 2) with Tillman Avenue. It hardly seems likely that the parties to the conveyance of the first parcel contemplated that the grantor would continue using those sewer pipes if he should later dispose of the second parcel. The nature of the easement and the purpose for which it was established are both indicative of an intention that the easement, and the covenant to share in the maintenance of such easement, should run, and not that they should create personal rights and liabilities. The same fact, of course, shows that the covenant directly touches and concerns the land, particularly since its obvious purpose was to share in the maintenance of an easement which yielded benefits only to whoever should own or possess the dominant estate.

In order for the benefit of a covenant to run, the promisee's legal relations in respect to the land in question must be increased; in order for the burden of a covenant to run, the promisor's legal interest in the land must be decreased. Clark, Real Covenants and Other Interests Which "Run With Land" 97 (2d Ed., 1947). Both requirements are met by the facts in this case, and the covenant thus "touches and concerns" both parcels.

It is manifest that there was also the requisite privity of estate. Privity existed between the original covenantor (appellant herein) and the original covenantee. Appellees herein, being the ultimate vendees and assignees of the servient estate (parcel No. 1) under the easement, are in privity with the ultimate vendees of the dominant estate (parcel No. 2), who owned such parcel at the time of the repairs and who have the duty of sharing expenses under the covenant made by appellant in the original conveyance of parcel No. 1.

The original grantor's (appellant's) promise to pay a share of the cost of upkeep, maintenance and use is as capable of classification as a covenant running with the land,

as would have been a promise by the grantee to improve the sewer system.

"A promise to pay for something to be done in connection with the promisor's land does not differ essentially from a promise by the promisor to do the thing himself, and both promises constitute, in a substantial sense, a restriction upon the owner's right to use the land, and a burden upon the legal interest of the owner." *Neponsit Property Owners' Assn.* v. *Emigrant Industrial Sav. Bank* (1938), 278 N. Y. 248, 258, 15 N. E. 2d 793, 796, rehearing denied, 278 N. Y. 704, 16 N. E. 2d 852.

"A duty to pay money in return for a privilege of user of realty directly concerns the land. It is a burden placed upon the normal privileges of user, a burden which would not exist except for the covenant." Clark, *supra,* at pages 152-153.

In 1889, in the case of *Shields* v. *Titus,* 46 Ohio St. 528, 539-540, the Ohio Supreme Court set forth three basic rules directly applicable to the case now before us:

(1) Where an easement is granted in other lands, for the convenience of the occupation of the dominant estate, without respect to the ownership or number of occupants of such estate, it is appendant or appurtenant to the dominant estate, and "passes with the dominant estate as an incident thereto;" (2) In such a case, the grantee of the servient estate takes such land with all the burdens which were imposed upon it by the grantor, insofar as they appeared at the time of sale to belong to it; (3) The vendees of the dominant and servient estates regarding an easement appurtenant "stand in the shoes of their respective vendors, and hold their lands with the qualities and burdens impressed upon them at the time of their purchase." As to this last point, see the opinion of this court, by Corrigan, J., in *Berardi* v. *Ohio Turnpike Comm.* (1965), 1 Ohio App. 2d 365, 370, stating that a subsequent owner of realty has "the same rights and obligation as the original owner *had* in regard to the property." (Emphasis added.)

The current owners of parcel No. 2, the dominant estate, thus stand in the shoes of the appellant, both as to

the benefit of the easement over appellees' property, and as to the burden of fulfilling the covenant to pay one-third of the cost of maintenance. When appellant divested himself of ownership in such parcel, his deed of conveyance not only transferred ownership of the realty and the easement, but also effectively assigned to the grantee the obligations under the covenant. *Railway* v. *Bosworth* (1888), 46 Ohio St. 81, 86-87. Thus, he was released from future liability under the covenant, which, running with the land to which it attaches, invests each new owner with future liability thereunder, and relieves the former owner from all liabilities arising subsequent to the transfer of ownership.

The stipulated facts in this case permit the application of the rule applied in cases involving party walls, where a grantee from or through the original covenantor is the first owner of the parcel to use the wall:

"Such an agreement [original covenant, that, if either party erects a wall on the dividing line between two adjacent parcels, the other party will, upon his making use of such wall, pay his share of the cost] is, it seems, prima facie construed as providing for reimbursement by the person alone who uses the wall for the construction of a building; and consequently the original covenantor, if he does not use the wall, is not liable on his covenant * * *." 3 Tiffany, The Law of Real Property (3rd ed.), 468, Section 857.

See, *e. g.*, *Hall* v. *Geyer* (1896), 7 C. D. 436, 440, 14 C. C. 229, 236-237. In similar fashion, appellant herein conveyed parcel No. 2 (the dominant estate) before the repairs to the sewer were made, and he therefore did not, and could not, receive any benefit from such repairs. *The land* was benefited, and only the owners of the land at the time such repairs were made, namely, Isabelle Chessler, Frank Gallo and Mary Gallo, can properly be held liable for payment of one-third of the cost of such repairs. These facts, together with the wording of the covenant in question, cannot permit the covenant to be regarded as a personal one, when such facts are viewed in accordance with

the long-standing rule in Ohio that, in determining whether a covenant shall run with the land, "* * * the material inquiries are whether the parties intended to impose such burden on the land, and whether it is one that may be imposed consistently with principle and equity." *Johnson* v. *American Gas Co.* (1917), 8 Ohio App. 124 (first paragraph of the syllabus).

It would be unnecessary to expound further on the law involved in the case before this court if it were not for the fact that two opinions of the Supreme Court of Ohio, written 70 years apart, are treated in the appellees' brief as though they conflict. A careful consideration of both cases reveals that no conflict exists, but it appears worthwhile to discuss the rules announced in those cases in order to clarify their compatibility. The first case, relied upon strongly by appellee, is that of *Hickey* v. *Railway Co.* (1894), 51 Ohio St. 40. The second, which discusses the *Hickey* opinion at length, is *Hughes* v. *Cincinnati* (1964), 175 Ohio St. 381.

The *Hickey case* manifestly cannot support appellees' contention that a covenant in a deed, made by a party thereto, his heirs and assigns, in the absence of additional verbiage, creates a personal obligation perpetually enforceable against such party.

Appellees claim that the Ohio Supreme Court in *Hickey*, in exonerating a former owner of the land from liability under a covenant in a deed to which he had been a party, had relied on language in the covenant stating that it would be "perpetually binding *on the owners* of the land." (Emphasis added.) Thus, maintain appellees, the peculiar facts of the *Hickey case* justified the Ohio Supreme Court's refusal to hold the original grantee to a covenant not invoked until after he had ceased to own the realty in question. In support of their contention, appellees cite, from the opinion in *Hickey*, the following:

"If the conveyance had been made subject only to the condition that, 'James Hickey, his heirs and assigns' shall make and maintain good and sufficient fences on each side of the right of way of the railway, the Railway Com-

pany, we think, might, at its election, pursue either the original grantee or his vendee, or both, for payment." 51 Ohio St. at 48.

The above language is, on its face, mere *obiter dictum.* Appellees argue that the words "Grantor [or grantee], his heirs and assigns," standing alone, must be construed to mean that the grantor (or grantee) will be liable *in perpetuum,* even if he divested himself of his ownership interest years before the covenant's operation occurred. Appellees refer to the emphasis in *Hickey* on the words, "perpetually binding *on the owners* of the land," as being illustrative of the type of language necessary to relieve past owners of liability under a real covenant.

It appears, however, that the Supreme Court in *Hickey* relied so heavily on that language simply because such words were the strongest indication of the intent of the parties to the deed. However, this cannot be said to negate the possibility that, even in the absence of words specifying "the owners of the land," a covenant may nonetheless run with the land, to the exoneration of former owners thereof.

In the *Hughes case,* the Ohio Supreme Court stated (175 Ohio St. at 385):

"In *Hickey* v. *Ry. Co.* * * * this court held that, since a covenant by a 'grantee, his heirs and assigns' to 'make and maintain good and sufficient fences' on boundaries between the land conveyed and land retained by the grantor was one *running with the land,* such covenant was enforceable *only* against an owner of the land and *not* against the grantee named in the deed containing that covenant *after he had disposed of such land."* (Emphasis added.)

The *Hughes case* involved a grantor who, as in the case before us, initially conveyed a portion of a larger parcel. Instead of retaining for himself an easement over the portion being granted, he granted an easement over the portion being retained by him. The clause granting such easement contained the following language:

"It being further understood and agreed that as a further consideration of this conveyance, *grantee, her heirs*

*and assigns agrees* that *whenever* the premises over which said easement is granted are improved for street purposes *said grantee, her heirs and assigns agrees to pay* her proportionate share of the expenses of said improvement, based on the number of feet fronting on said proposed street.'' (Emphasis added.)

It is to be noted that that covenant contained no restrictive wording pertaining to ''owners of the land,'' but instead bound ''grantee, her heirs and assigns.'' The covenant was to pay *''whenever''* the condition precedent might occur. Yet, the Ohio Supreme Court held (175 Ohio St. at 385):

''* * * in the instant case, the fact that not only the grantee but 'her heirs and assigns' agreed forbids the idea that the agreement to pay * * * was to be a mere personal contract of the grantee.''

In support of its holding the court cited two early cases, namely, *Easter* v. *Little Miami Rd. Co.* (1862), 14 Ohio St. 48, and *Huston* v. *Cincinnati & Zanesville Rd. Co.* (1871), 21 Ohio St. 235. In the *Huston case*, the criteria for resolving such a question as the one before us were explicitly and succinctly applied (21 Ohio St. at 246-247):

''Does the contract run with the land? Undoubtedly it does. It was an agreement to erect structures upon the land appropriated, and to keep them up so long as that was enjoyed. It was in the nature of a charge upon that land, subjecting it to a servitude in favor of the estate from which it was to be taken. It went to lessen the value of the one and enhance the value of the other. The nature of the agreement, its qualification of the estate granted, its connection with the proceeding by which the title was acquired, and the fact that the agreement was to be of perpetual obligation, utterly forbid the idea that it was intended to be a mere personal contract.''

Ohio case law long has held that a covenant, involving the perpetual obligation of a grantor or grantee and his heirs and assigns, which relates solely to a servitude of one estate to another, runs with the land and attaches to the ownership of the respective estates. That rule was

strongly reaffirmed in 1964 in the *Hughes case.* For this court to ignore that rule would be to violate the doctrine of *stare decisis.* Had the comments in the 1894 *Hickey* opinion which we deem *obiter dictum* been intended to have the force of law, the 1964 *Hughes* opinion would have served to overrule it. However, the Supreme Court, in the first paragraph of its syllabus in the *Hughes case,* cites *Hickey* as well as the *Easter* and *Huston cases,* as support for the rule, that such a covenant as is involved herein *runs with the land.* The *Hickey case* is, in fact, one of four cases cited at 20 American Jurisprudence 2d 594-595 as support for the rule that "Covenants that are real in character and run with the land may be transferred and assigned, *so as to vest the liability,* as well as the benefits, *in an assignee.*" (Emphasis added.) See, also, 3 Tiffany, *supra,* at 447, Section 850, citing *Hickey* as a case holding the covenantor "immune from liability * * * after he has parted with title * * *."

The case law of Ohio contains nothing which contravenes the generally-accepted view, that a covenant establishing a burden on a grantor, "his heirs and assigns," to assist financially in the maintenance of realty dealt with in the instrument establishing the covenant, is a real covenant which runs with the land, and which vests liability in the grantor, only for so long as he retains an interest in the estate to which the covenant attaches.

For the reasons stated, the judgment of the Municipal Court of Cleveland, insofar as it pertains to the defendant-appellant Ernest Korach, is reversed as being contrary to law, and final judgment is entered for defendant-appellant.

*Judgment reversed.*

WASSERMAN, C. J., and CANARY, J., concur.