OPINION
Defendants-appellants, Richard and Anna Dick, and the Anna Hill Dick Revocable Living Trust, appeal from a judgment of the Franklin County Court of Common Pleas awarding plaintiffs-appellees, Jack and Susan Dingle, Gerald and Joyce Penn, Elaine Andrew, and William and Joan Merkle, $627, said amount being one quarter of the costs incurred prior to 1997 by plaintiffs in maintaining a private road located on their properties, but regularly used by defendants for ingress and egress to their adjoining property.
This appeal centers on a twenty-one-acre parcel of real estate that abuts the east side of Riverside Drive in Upper Arlington, Ohio. In the late 1940s, the entire twenty-one-acre parcel was owned by Francis and Emily Kultchar. On January 26, 1949, the Kultchars conveyed 1.132 acres of the twenty-one-acre parcel to John and Margretta Patterson. The deed conveying the property granted the Pattersons an easement to use an existing private road that was adjacent to the property purchased by the Pattersons, but located on the 19.868 acres retained by the Kultchars. The private roadway in existence in 1948 ran across the 19.868-acre parcel retained by the Kultchars from Riverside Drive to the northeast corner of the 1.132-acre parcel conveyed to the Pattersons. The deed from the Kultchars to the Pattersons contained no covenant requiring the Pattersons to help pay for the maintenance of the private road over which they were granted an easement.
On April 29, 1958, the Pattersons conveyed their 1.132-acre parcel to William and Bessie Ireland. The deed conveying the property from the Pattersons to the Irelands, included the following covenant:
 Grantees for themselves and their heirs and assigns agree to help maintain that portion of the private driveway which adjoins the southerly side of the above described parcel, from Riverside Drive to the Northeast corner of said parcel; said portion of maintenance not to exceed one-fourth (1/4) thereof; and to be paid as long as the grantees, their heirs or assigns, continue to use said private drive. * * *
At the time the Pattersons conveyed the 1.132 acres to the Irelands, the Pattersons did not own any other property in the area. Over the next thirty years, the 1.132-acre parcel passed through several owners until defendants acquired it in the 1980s.
Following their conveyance of the 1.132-acre parcel to the Pattersons in 1948, the Kultchars retained the remaining 19.868 acres until sometime in the late 1960s. In 1964, the Kultchars extended the private roadway from the northeast corner of what is now defendants' property to Sawmill Road, such that the private road provided a connection between Riverside Drive and Sawmill Road. In the late 1960s, the Kultchars sold 7.703 acres of their remaining 19.868-acre parcel. This 7.703-acre parcel passed through several owners and was eventually subdivided and developed into what is now known as the Squire's Ridge Subdivision. Plaintiffs are all of the property owners in the Squire's Ridge Subdivision. Following development of the Squire's Ridge Subdivision, the entire private road running between Riverside Drive and Sawmill Road came to be known as Squires Ridge Road.
Between 1991 and 1999, plaintiffs spent a total of $10,026 maintaining Squires Ridge Road. In particular, plaintiffs repaved the road, repaired the storm sewers along the roadway, and regularly removed snow from the road. Throughout this same period, defendants regularly used both the original and newer portions of Squires Ridge Road for access to and from Riverside Drive and Sawmill Road, respectively. However, defendants paid no portion of the expenses incurred in maintaining and improving any part of Squires Ridge Road.
On July 11, 1997, plaintiffs filed suit in the Franklin County Court of Common Pleas seeking an injunction prohibiting defendants from using any portion of Squires Ridge Road. On August 13, 1997, defendants filed an answer, together with a counterclaim requesting a declaratory judgment that they had a right to use Squires Ridge Road pursuant to the easement contained in the 1948 deed conveying what is now their property from the Kultchars to the Pattersons. On February 1, 2000, plaintiffs filed an amended complaint adding a claim requesting that, if the trial court determined that defendants had a right to use Squires Ridge Road, the court also ruled that the covenant contained in the 1958 deed conveying defendants' property from the Pattersons to the Irelands requires defendants to pay one-fourth of the expense of maintaining the private road.
Both plaintiffs and defendants moved for summary judgment. On September 5, 2000, the trial court rendered a decision in which it denied defendants' motion for summary judgment in its entirety, and granted plaintiffs' motion for summary judgment in part. In so doing, the trial court held that the easement contained in the 1948 deed conveying the 1.132-acre parcel from the Kultchars to the Pattersons granted defendants a right to use that part of Squires Ridge Road between Riverside Drive and the northeast corner of their property, as that portion of the road was in existence at the time of the easement's creation. However, the trial court held that plaintiffs were entitled to an injunction prohibiting defendants from using the portion of Squires Ridge Road which runs from the northeast corner of defendants property to Sawmill Road, as that portion of the road was not in existence at the time of the easement's creation.
Following the trial court's decision on the parties' cross-motions for summary judgment, the only issue remaining for trial was whether the covenant contained in the 1958 deed conveying what is now defendants' property from the Pattersons to the Irelands obligates defendants to pay a part of the cost of maintaining the portion of Squires Ridge Road, which defendants are entitled to use pursuant to the 1948 easement. On October 30, 2000, this remaining issue was tried to the court. On January 8, 2001, the trial court entered a judgment holding that the covenant in the 1958 deed obligates defendants to pay up to one quarter of the cost of maintaining the portion of Squires Ridge Road between Riverside Drive and the northeast corner of defendants' property, and ordering defendants to pay plaintiffs $627. Defendants appeal from the trial court's judgment, asserting a single assignment of error, to-wit:
 The Trial Court Committed Reversible Error By Concluding That The Requirements Of a Restrictive Covenant Are Met In This Case.
In their assignment of error, defendants argue that the trial court erred in holding that the covenant in the 1958 deed obligates them to pay one quarter of the cost of maintaining the portion of Squires Ridge Road between Riverside Drive and the northeast corner of their property, as the covenant did not "run with the land."
Restrictive deed covenants are classified as either real covenants or personal covenants. Uland v. S.E. Johnson Cos. (Mar. 13, 1998), Williams App. No. WM-97-005, unreported. Personal covenants are enforceable only between the covenantor and covenantee. Id. In contrast, real covenants are said to "run with the land"; that is, they are enforceable as between successors in interest to the dominant and servient estates. Peto v. Korach (1969), 17 Ohio App.2d 20, 25.
In order for a covenant to be a real covenant and to run with the land, it must be shown that: (1) it was the intent of the original covenantee and covenantor that the covenant run with the land; (2) the covenant "touches and concerns" the land at issue; and (3) privity of estate exists between the dominant and servient estates. LuMac Dev. Corp. v. Buck Point Ltd. Partnership (1988), 61 Ohio App.3d 558, 562; City of Perrysburg v. Koenig (Dec. 8, 1995), Wood App No. WD-95-011, unreported.
In the present case, the parties agree that, when the Pattersons and the Irelands entered into the covenant in 1958, they intended for the covenant to run with the land. The parties further agree that the 1958 covenant touches and concerns the land. The parties disagree, however, over whether the privity requirement is satisfied.
Defendants contend that, in order for a covenant to run with the land, there must be both horizontal and vertical privity. Horizontal privity exists where the covenant was created as a part of a conveyance of real property between the creating parties. See City of Perrysburg (holding that there was no horizontal privity between the creators of the covenant, as no conveyance of any interest in land occurred in connection with the creation of the covenant). Here, the 1958 covenant was created by the Pattersons and the Irelands as part of the Patterson's conveyance of what is now defendants' property to the Irelands. Accordingly, horizontal privity exists with respect to the 1958 covenant.
The real issue in the present case centers on the vertical privity requirement. Defendants insist that the case law holds that, in order for vertical privity to be present, continuous chains of title must exist between both the covenantor and the current owner of the servient estate and between the covenantee and the current owners of the dominant estate. Under this definition, vertical privity would not exist with respect to the 1958 covenant. Although a continuous chain of title exists between the covenantor, the Irelands, and the current owner of the servient estate, defendants, a continuous chain of title does not exist between the covenantee, the Pattersons, and the current owners of the dominant estate, plaintiffs. This situation arises because, unlike the typical situation in which the covenant is created for the benefit of the covenantee who owns the dominant estate, the 1958 covenant was not created for the benefit of the covenantee, the Pattersons, but for the third-party owners of the dominant estate, the Kultchars.
Defendants cite three cases in support of their definition of vertical privity, Peto, at 506; Shields v. Titus (1889), 46 Ohio St. 528, 539-540, and Runyon v. Paley (1992), 331 N.C. 293, 302-303. However, a close reading of these cases reveals that only Runyon, a non-Ohio case, supports defendants' definition. It is true that Peto and Shields involve factual scenarios in which continuous chains of title exist between both the covenantor and the current owner of the servient estate, and between the covenantee and the current owner of the dominant estate. However, both cases involve the typical fact pattern in which the covenantee is also the owner of the dominant estate. Further, neither case appears to attach any significance to the fact that a continuous chain of title existed between the covenantee and the current owner of the dominant estate, as opposed to the owner of the dominant estate at the time of the covenant's creation and the current owner of the dominant estate. Thus, it appears that Peto and Shields could just as easily be cited for the proposition that vertical privity requires a continuous chain of title between the owner of the dominant estate at the time of the creation of the covenant and the current owner of the dominant estate.
Plaintiffs contend that vertical privity requires that a continuous chain of title exist from the owner of the servient estate at the time of the creation of the covenant to the current owner of the servient estate, but does not require such a chain of title to exist from the owner of the dominant estate at the time of the creation of the covenant to the current owner of the dominant estate. In support of this view, plaintiffs cite City of Perrysburg, and Head v. Evans (Feb. 11, 1981), Hamilton App. No. C-790831, unreported, both of which expressly define vertical privity to require only a continuous chain of title running from the servient estate. Perrysburg, at 3; Head, at 4, fn. 4.
Further support for the view that a continuous chain of title running from the servient estate is not required in order for a covenant to run with the land is found in Berger v. Van Sweringen Co. (1966),6 Ohio St.2d 100. In Van Sweringen, the Ohio Supreme Court held that the plaintiffs, individuals who owned homes located in the same block as the servient property, could enforce a covenant restricting the servient estate to residential use irrespective of whether the individual plaintiffs could each establish a continuous chain of title running from their properties to the covenantee or the dominant estate. Id. at 104. In so holding, the court did not look to whether the plaintiffs could establish vertical privity, but looked, instead, to the intent of the covenanting parties to determine whether the plaintiffs' properties were intended to benefit from the covenant. Id. at 102-103. In looking to the intent of the covenanting parties, instead of vertical privity, the court was careful to note that its approach was not limited to cases involving uniform building plans or schemes. Notably, the most recent version of the Restatement has essentially adopted the approach utilized by the Van Sweringen court. See Restatement of the Law 3d, Property (1998), Section 5.2, Comments b and d (rejecting the doctrine of vertical privity and asserting that the intent of the parties should determine whether the benefits and burdens of a restrictive covenant runs with the land).
Based on the analysis in Van Sweringen, we conclude that plaintiffs may enforce the terms of the 1958 covenant. It is apparent from the facts surrounding the creation of the 1958 covenant that the Pattersons and the Irelands intended the covenant to benefit what was then the Kultchar's property. Because the "private driveway" referenced in the covenant was on the Kultchar's property, no other reasonable reading of the covenant is possible. In addition, the covenant contains the phrase "the grantees, their heirs or assigns." The use of these words plainly indicates an intent that the covenant run with the land. LuMac, at 563. Accordingly, plaintiffs, as the present owners of the dominant estate, are proper parties to enforce the covenant.
Defendants' assignment of error is overruled.
Having overruled defendants' only assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT, P.J., and BROWN, J., concur.