OPINION
Defendant-appellant, Kermit E. Scott, appeals from a judgment of the Franklin County Court of Common Pleas (1) awarding plaintiff-appellee, Candlewood Lake Association, Inc. ("the Association"), $29,465.64, plus court costs, in plaintiff's action for collection of unpaid assessments and utilities on property defendant owned, and (2) granting summary judgment in favor of third-party defendant-appellee, Tom C. Elkin, on plaintiff's claim for violation of the Fair Debt Collection Practices Act, Section 1692 et. seq., Title 15, U.S.Code.
The Association is an association of property owners in Candlewood Lake Subdivision in Morrow County, Ohio. Defendant is the record owner of two lots in the Candlewood Lake Subdivision. Defendant's father conveyed the two lots to defendant in a general warranty deed recorded in Morrow County on March 23, 1988. The lots were conveyed subject to "restrictions; conditions reservations and easements of record." (Deed recorded March 23, 1988.)
Various deed restrictions were recorded in Morrow County in 1972 in a document entitled the Candlewood Lake Association, Inc. Deed Restrictions (the "deed restrictions") concerning the Candlewood Lake Subdivision. The deed restrictions state the subdivision was established "with a strong recreational orientation." (Paragraph 201 of deed restrictions.) They authorize the Association to assess fees against its property owners for annual operations charges, maintenance services, water and sewer system charges, and various other assessments, including collection costs incurred by the Association to collect overdue fees and assessments. The deed restrictions further provide that "[e]very person who shall become an owner of a lot in the Subdivision will be conclusively held to have covenanted to pay the Association all charges made by the Trustees pursuant to these Restrictions." (Paragraph 605.06 of deed restrictions.)
In 1989 and 1990, letters were mailed to defendant by the Morrow County Prosecuting Attorney advising defendant that real estate taxes were delinquent on the two subject lots. In 1991, the Association, represented by Elkin, filed suit against defendant and obtained judgment against him for the Association's unpaid assessments on the lots. Defendant did not move to set aside or appeal the judgment, and apparently eventually satisfied the judgment.
In June 1993, defendant filed a "Short Form" in the Franklin County Probate Court in relation to the estate of his father, who died in February 1993. In listing the assets of his deceased father, defendant did not include the two lots on the form. On December 20, 1993, defendant signed and forwarded to the Association an "Offer to Sell Property" in which he listed the two lots for sale, asked interested parties to make an offer, and provided his name and telephone number as the seller. Defendant signed the Offer to Sell Property form with the stated understanding "that [the Association] is under no obligation to sell or market this lot and ownership and responsibility for same remains with present owner." (Emphasis added.)
On May 29, 1997, Elkin filed this lawsuit in Morrow County on the Association's behalf, again to collect the Association's unpaid assessments arising from the deed restrictions since the prior lawsuit. The fees included operations charges, maintenance services, and water and sewer system fees. Defendant filed an answer, counterclaim and third-party complaint (1) denying he owned any property in the Candlewood Lake Subdivision, (2) denying he was a member of the Association, (3) alleging the Association was unjustly enriched in the amount of $1,075 (which reflected prior payments to the Association by defendant's wife on defendant's behalf), and (4) alleging Elkin had violated the Fair Debt Collection Practices Act. All parties moved for summary judgment, and the case was transferred to Franklin County, the county where defendant resides, on defendant's motion for change of venue.
On February 8, 2001, the trial court issued a decision granting summary judgment in favor of the Association and Elkin, and overruling defendant's motions for summary judgment and attorney fees. The court found defendant was a record owner of two lots in Candlewood Lake Subdivision, as he had accepted his father's conveyance of the properties to him. The court further found that as a record owner of the lots, defendant automatically became a member of the Association under the deed restrictions. Liability having been established by the court, the matter was referred to a magistrate for a hearing on the amount of damages. In a judgment entered May 3, 2001, the court adopted the magistrate's decision on damages and held defendant liable to the Association for $29,465.64 in damages, plus the assessment of court costs. Defendant appeals, assigning the following errors:
 I. TRIAL COURT ERRED IN NOT GRANTING SUMMARY JUDGMENT FOR KERMIT SCOTT.
 II. TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR CANDLEWOOD LAKE ASSOCIATION.
 III. TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR THIRD PARTY DEFENDANT, TOM ELKIN.
 IV. TRIAL COURT ERRED IN NOT GRANTING JUDGMENT FOR KERMIT SCOTT FOR ATTORNEY FEES, DAMAGES AND COSTS UNDER FAIR DEBT COLLECTION PRACTICE ACT AND OHIO RULES CIVIL PROCEDURE, RULE 3(C).
In his first assignment of error, defendant asserts the trial court should have granted summary judgment in his favor because he was not an owner of the lots in Candlewood Lake Subdivision.
Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the non-moving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. Appellate review of summary judgment motions is de novo. Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc. (2001), 141 Ohio App.3d 269,275. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.
A deed must be delivered to be operative as a transfer of ownership of land, for delivery gives the instrument force and effect. Kniebbe v. Wade (1954), 161 Ohio St. 294, 297. Recording a new deed perfects delivery, and the gift becomes irrevocable. Romaniw-Dubas v. Polowyk (Aug. 10, 2000), Cuyahoga App. No. 75980, unreported. An effective delivery, however, also requires an acceptance on the part of the grantee, coupled with the mutual intent of the parties to pass title to the property described in the deed. Kniebbe, supra.
Defendant does not contend his father did not intend to deed him the property; nor does he contend the deed was not "delivered" upon recording. Rather, defendant argues he never accepted, but instead renounced, the 1988 conveyance of the property from his father and, as a consequence, is not an owner of any property in the Candlewood Lake Subdivision.
In support of his argument defendant presented two affidavits to the trial court. One is the affidavit of the attorney who prepared the deed for defendant's father in 1988. The attorney attests he never saw or spoke to defendant regarding the deed either before or after its preparation. While generally a grantee's acceptance is necessary to constitute a good delivery, "where a grant is plainly beneficial to the grantee, his acceptance of it is to be presumed in the absence of proof to the contrary," even where the grantee has no knowledge of the grant. Lessee of Mitchell v. Ryan (1854), 3 Ohio St. 377, 386-387; Streeper v. Myers (1937), 132 Ohio St. 322, paragraph two of the syllabus ("[a]cceptance by the donee of a gift beneficial in character will be presumed, and this presumption prevails where the gift is delivered to a third person as trustee for the donee without the latter's knowledge"); Ray v. Stepp (Aug. 10, 1995), Jackson App. No. 95CA758, unreported, citing Mitchell, supra, and its stated proposition; Tetonis v. Toumazos (Aug. 10, 1981), Trumbull App. No. 2938, unreported (acceptance of a gift that is beneficial will be presumed even where the donee has no knowledge of the gift). Contrary to defendant's assertions, defendant did not establish "proof to the contrary" in this case.
Specifically, in the second affidavit presented in the trial court, defendant attests he first knew the Candlewood Lake properties were deeded in his name when he received letters from Elkin regarding the Association's assessments and utility charges on the properties, no later than 1991. In the affidavit, however, defendant does not aver he failed to accept ownership of the lots; defendant avers that when he learned the lots had been deeded to him, defendant told Elkin "he would go out in the street and deed them away to someone." (June 11, 1999 Scott affidavit.) The act of deeding the property to someone else is consistent with and is an incident of ownership of property. See, generally, F.A. Requarth Co. v. State (1974), 38 Ohio St.2d 77, 84 (a grantor cannot pass title to a grantee that he does not have); Gyorgy v. Green (Mar. 21, 1929), Summit App. No. 1598, unreported (a grantor cannot convey in a deed what he does not own).
Defendant's affidavit further avers he made payments to the Association for unpaid fees and assessments solely as a result of Elkin telling him that because defendant's name was on the recorded deed, he was the owner, he was therefore responsible for the unpaid assessments, and he could not deed the property to someone else until the bills were paid.
A person's reliance on legal advice is a hallmark of an attorney-client relationship. Landis v. Hunt (1992), 80 Ohio App.3d 662, 669; Sayyah v. Cutrell (2001), 143 Ohio App.3d 102, 111. Defendant does not suggest he and Elkin had an attorney-client relationship; without question, the Association, not defendant, was Elkin's client. An attorney is not liable to a third party as a result of having performed service on behalf of a client, in good faith, unless the third party was specifically intended to be a beneficiary of the attorney's advice, or unless the attorney acts with malice. Simon v. Zipperstein (1987), 32 Ohio St.3d 74, 76; Scholler v. Scholler (1984), 10 Ohio St.3d 98, 103; Sayyah, supra. Defendant does not maintain the Association intended him to be a beneficiary of Elkin's advice; nor does he assert Elkin's advice to him was malicious. Indeed, defendant could have sought his own legal counsel. Instead, defendant acquiesced in the entry of the 1991 default judgment against him for payment of the unpaid fees and assessments on the property, did not move for relief from the judgment or appeal the judgment, and apparently eventually satisfied the judgment. Based on the record before us, defendant's payment of the property assessments, after he was advised he was the record owner of the property, was consistent with, not adverse to, his ownership of the subject property.
Further record evidence supports a determination that defendant's actions were consistent with acceptance rather than rejection of the property. On a "Short Form" defendant filed in the Franklin County Probate Court in June 1993 in relation to his father's estate, defendant did not list the subject lots as assets of his deceased father. The omission indicates defendant did not consider his father to be the owner of the lots. Consistent with that omission, defendant later in 1993 listed the lots for sale through the Association, holding himself out on the listing form as the owner of the lots.
Defendant has not rebutted the presumption that at least by 1991 he had knowledge of and accepted the two lots, vesting ownership of the property in defendant. Accordingly, the trial court did not err in denying defendant summary judgment, and defendant's first assignment of error is overruled.
In his second assignment of error, defendant asserts the trial court erred in granting summary judgment in favor of the Association and obligating defendant, solely by virtue of his alleged ownership of the two lots in Candlewood Lake Subdivision, to pay the charges the Association assessed on the two lots.
"If a grantee accepts a deed, the knowledge of its provisions is legally imputed to him; and, by its acceptance, he is bound by all of its provisions and is estopped to deny their legal effect." 37 Robinwood Assoc. v. Health Industries, Inc. (1988), 47 Ohio App.3d 156, 157. Here, the warranty deed defendant accepted conveyed the property to defendant expressly subject to "restrictions; conditions reservations and easements of record." Defendant does not dispute the applicable deed restrictions were "of record," having been duly recorded with Morrow County in 1972.
The deed restrictions impose various obligations on the Association and lot owners within the Candlewood Lake Subdivision, including obligations of the lot owners to pay for the installation of water and sewer lines, "an availability fee charged to non-users" for the water and sewer systems, mowing service, and an annual operations charge, together with special assessments, fees or other charges the Association levied. In response defendant argues the covenants of the lot owners to pay those charges expressed in the deed restrictions do not "affect or touch and concern the land" and therefore are not real covenants that "run with the land." Instead, defendant asserts the covenants are merely personal covenants or obligations of individuals who have joined the Association. Because he has not joined the Association, defendant maintains he is not obligated to pay the Association's assessments.
In Peto v. Korach (1969), 17 Ohio App.2d 20, the Eighth District Court of Appeals examined a deed restriction that obligated the owner of property to share in the cost of the upkeep, maintenance, and use of water and sewer facilities located on an adjacent parcel of property, reserving to the owner a right to use the water and sewer facilities in common with the owner of the other property. In determining whether the obligation to share in the maintenance cost was a covenant running with the land or a personal covenant, the court summarized the pertinent law as follows:
 The common-law test of a covenant running with the land requires that its performance or nonperformance must affect the nature, quality, value, or mode of enjoyment of the estate demised to which it must relate. The generally-prescribed requisites for a covenant to run with the land are as follows: (1) The intent of the original grantor and grantee must have been that the covenant run with the land; (2) the covenant must either "affect" or "touch and concern" the land in question; (3) there must be privity of estate between the party claiming the benefit of the covenant and the party who is called upon to fulfill it. Peto, supra, at 22-23. (Citations omitted.)
See, also, LuMac Dev. Corp. v. Buck Point Ltd. Partnership (1988),61 Ohio App.3d 558, paragraph one of the syllabus; Hughes v. Cincinnati (1964), 175 Ohio St. 381, 383-385 (discussing previous Ohio Supreme Court decisions regarding covenants that run with the land).
Under the first prong of the common-law test, the court in Peto held that an obligation to share in the cost of upkeep, maintenance and use of water and sewer facilities is a covenant that runs with the land because the language of the covenant expressed its intent that the owner of the property and his heirs and assigns have rights and duties regarding the water and sewer systems. Moreover, it found the second prong satisfied, as a covenant "touches and concerns the land" where in return for the duty to pay money the property owner has a privilege to use water and sewer facilities that would directly benefit his land. Under the last prong, the court found privity, concluding the owners of the parcels of land were ultimate assignees of the original grantor and grantee, who stood in their predecessors shoes and had "the same rights and obligation as the original owner had in regard to the property." Peto, supra, at 25.
Similarly, the covenants at issue, as the covenants in Peto, are covenants that run with the land, not personal covenants. First, the deed restrictions affirmatively state a clear intention that "[t]he Restrictions shall run with the land and shall be binding upon the Association and upon all parties (`Owners') having or acquiring any right, title or interest in the real property or any part thereof." (Paragraph 203 of deed restrictions; emphasis added.) See, also, paragraph 905 ("The foregoing covenants and restrictions shall run with the land and shall be binding on all parties and all persons claiming under them * * *"). Similar language in a "Membership Covenant" in the by-laws of a resort property association has been held to constitute a covenant running with the land. See Rome Rock Assoc., Inc. v. Warsing (Dec. 23, 1999), Ashtabula App. No. 98-A-0051, unreported ("This covenant concerning said real estate and the enjoyment, use and benefit thereof shall be deemed to run with the land and non-payment of the annual charges shall be a lien thereon").
In addition to the express language that the covenants "run with the land," a further intention here that the covenants run with the land is found in language that grantees of deeds subject to the restrictions accept the deed and the restrictions "for themselves, their heirs, personal representatives, successors, and assigns." (Paragraph 901 of deed restrictions; emphasis added.) See Hughes, supra, at 384-385 (determining a covenant by a "grantee, his heirs and assigns" to share in the cost of streets is a covenant that runs with the land); Peto, supra, at 23, 28 (concluding that although a covenant may run with the land where the original covenant does not use the words "heirs," "assigns," or "successors," use of such words indicates an intent that a covenant run with the land); LuMac Dev., supra, at 563-564 (use of the terms "assigns," "heirs," or "successors" clearly reflects an intent that a covenant runs with the land).
Secondly, as in Peto, the covenants here are for maintenance services and access to and use of water and sewer systems. Those benefits inure to defendant's property, not to defendant personally, and increase the value of the property. Therefore, the covenants "touch and concern" the land. Peto, supra, at 24.
Thirdly, pursuant to his father's conveyance of the property to him in the deed, defendant is an assignee of his father, obtaining not only the rights incident to his father's ownership but also the obligations imposed by the covenants in the deed restrictions. LuMac Dev., supra, at 563; Peto, supra, at 24-26. On his acceptance of the deed and as an owner of the property, defendant became subject to and bound by the provisions in the Association's deed restrictions, including Paragraph 203 that states "all of the lots located in the various recorded plats * * * are held and shall be held, conveyed, pledged or encumbered, leased, rented, used, occupied and improved, subject to these Restrictions * * *." Paragraph 901 then provides "[t]he grantee of any lot subject to these Restrictions, by acceptance of a deed conveying title thereto * * * acknowledge[s] the rights and powers of the Association with respect to these Restrictions * * * and agree[s] and consent[s] to * * * comply with and perform such Restrictions and agreements." Accordingly, as a grantee of a lot subject to the deed restrictions, defendant agreed to comply with the restrictions.
Defendant's argument that the Association's deed restrictions do not apply to him because he never joined the Association is unavailing. Paragraph 602 of the deed restrictions provides that "[m]embership shall be appurtenant to and required as incidental to ownership to each lot in the Subdivision. * * * [O]ne owner of each lot shall, by reason of such ownership, become a Voting Member of the Association." As the record owner of property in Candlewood Lake Subdivision, defendant automatically became a member of the Association. Privity between defendant and the Association is accordingly established. The evidence thus demonstrates that the covenants at issue run with the land. A person's liability for such covenants arises by virtue of his or her ownership of an interest in land, and it continues at least until he or she is divested of ownership of the land. See Peto, supra, at 22.
Pursuant to the Association's deed restrictions, defendant's liability automatically attached as an owner of lots subject to the deed restrictions, and defendant became liable to pay all charges, fees, and fines assessed on his lots by virtue of Paragraph 605.04. It mandates, in pertinent part, that such assessments "shall be the personal liability of the Owner(s) and shall constitute a lien upon the lots owned by the record owner * * *." In addition, Paragraph 605.06 provides that every owner of a lot subject to the restrictions agrees and covenants to pay all charges or liens assessed on the lots, including assessments which may exist upon the lots at the time the ownership interest is acquired. Paragraph 605.05 further provides that defendant, as an owner of a lot, is liable to pay "for any expenses or costs of collection, including attorney's fees, incurred by the Association" in collecting unpaid fees and charges. By virtue of those provisions, defendant has covenanted to pay assessments, including charges for collection efforts, on his two lots.
Accordingly, when defendant became a record owner of lots in Candlewood Lake Subdivision, he became subject to all of the provisions in the recorded Association deed restrictions and liable to pay the charges, fees, and fines the Association assessed on the lots pursuant to the deed restrictions, including attorney fees and costs the Association incurred to collect unpaid charges, fees, and fines. Summary judgment was appropriately granted on behalf of the Association, and defendant's second assignment of error is overruled.
Defendant's third assignment of error asserts the trial court erred in holding that attorney Elkin did not violate the Fair Debt Collection Practices Act ("FDCPA"), Section 1692 et. seq., Title 15, U.S.Code. Defendant specifically claims (1) defendant has no valid debt for which Elkin, acting on behalf of the Association, could file the present lawsuit against defendant, as defendant does not own the property in question and is not a member of the Association, (2) Elkin has made false representations to defendant regarding the purported debt, in violation of Section 1692e(10) of the FDCPA, and (3) Elkin improperly filed this action in Morrow County, a county that is not defendant's residence, in violation of Section 1692i(a)(2)(B) of the FDCPA.
Defendant's first contention is without merit. As noted, defendant has a valid and enforceable obligation as an owner of property in Candlewood Lake Subdivision to pay the fees, charges, and fines the Association assessed pursuant to the recorded deed restrictions. Paragraph 605.05 of the deed restrictions, the "Enforcement" provision, expressly gives the Association the right to sue an Association property owner for unpaid fees and charges, and to recover the expenses of collection, including attorney fees, incurred in its collection efforts. Therefore, the Association had the right to sue defendant to collect the unpaid assessments on the two lots in Candlewood Lake Subdivision for which defendant is the record owner.
Defendant's second claim is similarly unavailing. In support, defendant specifically asserts that Elkin's "[a]dvising Scott, an unsophisticated consumer not represented, at a time when Elkin represented an adverse interest to Scott, is false and deceptive means to collect a debt and is violation of 15 U.S.C. § 1692e(10)." Defendant does not specifically identify the advice which he purports to be "false and deceptive."
Section 1692e(10) of the FDCPA provides that a debt collector violates the act by "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Defendant apparently was represented by counsel in the present collection action, at least since March 12, 1997, when attorney Elkin wrote a letter to defendant's present counsel regarding the Association's claim against defendant. The record simply does not reflect, and defendant has not otherwise established, that Elkin, acting on behalf of the Association, violated Section 1692e(10) of the FDCPA by making any false representation or using deceptive means to collect from defendant the overdue, unpaid assessments on the two subject lots in Candlewood Lake Subdivision.
As to defendant's third claim, venue was proper in Morrow County, the county where Candlewood Lake Subdivision is located. Pursuant to Section 1692i(a)(1), the "Venue" provision of the FDCPA, "[a]ny debt collector who brings any legal action on a debt against any consumer shall[,] in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located[.]" Similarly, under Civ.R. 3(B)(5), venue properly lies in "[a] county in which the property, or any part of the property, is situated if the subject of the action is real property or tangible personal property."
Here, although not expressly stated in the complaint, the Association was enforcing its interest in real property by filing this lawsuit against defendant in Morrow County for unpaid assessments the Association had levied on the two lots defendant owned in Candlewood Lake Subdivision in Morrow County, pursuant to the Association's deed restrictions recorded in Morrow County that granted it a lien against the property. An action for enforcement of an encumbrance or charge upon real property is an action to enforce an interest in real property. See Snyder v. Clough (1942), 71 Ohio App. 440, 446. Accordingly, venue was proper in Morrow County under both Section 1692i(a)(1) of the FDCPA and Civ.R. 3(B)(5). Concluding that defendant has not established a violation of the FDCPA, we overrule defendant's third assignment of error.
Defendant assigns as his fourth error the trial court's failure to grant defendant statutory damages, costs, and attorney fees under Section 1692k of the FDCPA ("any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person" for damages, costs, and attorney fees) and under Civ.R. 3(C)(2) ("When an action is transferred to a county which is proper, the court may assess costs, including reasonable attorney fees, to the time of transfer against the party who commenced the action in a county other than stated to be proper in division (B) of this rule"). Defendant argues he was entitled to an award of damages, costs and attorney fees because the FDCPA was violated. Because defendant has not prevailed in any of his assignments of error, including an alleged violation of the FDCPA or improper venue, he is not entitled to an award of damages, costs or attorney fees under the FDCPA or Civ.R. 3(C)(2). Accordingly, defendant's fourth assignment of error is overruled.
Having overruled defendant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
TYACK and PETREE, JJ., concur.